### CROWN POINT MIN. CO. v. BUCK.

### BUCK v. CROWN POINT MIN. CO.

(Circuit Court of Appeals, Eighth Circuit. October 9, 1899.)

Nos. 1,156, 1,164.

**1. TRIAL—DIRECTING VERDICT.**

 It is error to stop the trial of a case, and direct a verdict, before competent evidence offered upon material issues has been received.

**2. MINING CLAIMS—OVERLAPPING LOCATIONS.**

 A mineral discovery made on free public land, and a claim located thereon, vest in the locators all the free public land within its limits, and every

vein whose apex is found within such free public land, within the surface lines of the claim extended downward vertically, whether the surface thus secured is all or only part of the tract within the boundary lines of the claim.

In Error to the Circuit Court of the United States for the District of Colorado.

W. H. Bryant (C. S. Thomas and H. H. Lee, on the brief), for the Crown Point Mining Company.

George L. Hodges and Bruce Glidden, for William M. Buck.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge.    There was a conflict between the lode mining claim Louisa, which was owned by William M. Buck, who will be called the "defendant" in this opinion, and the lode mining claim Crown Point, which was owned by the Crown Point Mining Company, which will be called the "plaintiff." The defendant, Buck, applied for a patent for his claim; and the Crown Point Company filed an adverse claim, and then brought this action in the court below, under sections 6 and 7 of the act of congress of May 10, 1872 (now sections 2325 and 2326 of the Revised Statutes), to determine who was entitled to the area in conflict between the two claims. While the trial of this action was in progress, and while the defendant was presenting his evidence, the court below stopped the introduction of evidence, and instructed the jury to return a verdict that neither party was entitled to any of the property in controversy. Both parties complain of this ruling, and each of them has sued out a writ of error to reverse the judgment which is founded upon it. The course of the proceedings to the time this ruling was made was in this way:    In its complaint the plaintiff alleged that A. J. Ray and J. P. Wilcox discovered a vein or ledge of mineral-bearing matter containing gold on November 25, A. D. 1896, upon an unappropriated part of the public domain; that on December 7, 1896, they located the Crown Point lode mining claim, which was 1,500 feet in length and 300 feet in width, upon it; that they marked the boundaries of this claim and in all things complied with the requirements of the laws and with the customs of miners, so that they secured a legal mining claim; and that the title and possession of this claim had been vested in the plaintiff by various mesne conveyances.    The Crown Point Company then alleged that about December 17, 1896, the defendant wrongfully entered upon that portion of the Crown Point claim which is within the exterior lines of the Louisa lode mining claim, and subsequently applied for a patent for it, and withheld the possession of it from the Crown Point Company.    It also averred that the discovery and location of the Louisa claim were fraudulent and void.    The defendant, Buck, in his answer, denied all the allegations of the complaint with reference to the discovery, location, and possession of the Crown Point claim, and alleged that on November 19, 1896, John McConaghy discovered a gold-bearing lode within the limits of the Louisa claim, and duly located and marked the boundaries of that claim, and complied with the requirements of the laws and with the customs of the miners, so that by

prior discovery he acquired a valid mining claim, and that the title and the right to the possession thereof had passed by various mesne conveyances to the defendant. On the trial the plaintiff introduced evidence to the effect that Ray and Wilcox discovered a gold-bearing lode or vein within the limits of the Crown Point claim on November 25, 1896, and that they thereupon located that claim, marked its boundaries, and complied with the necessary requirements of law and custom to vest in them a legal right to a valid mining claim; that this title and right to the possession of this claim had passed to the plaintiff; and that the Louisa lode mining claim contained within its boundaries a portion of the Crown Point claim, including the land on which Ray and Wilcox made their discovery and sunk their shaft. Thereupon the plaintiff rested, and the defendant introduced evidence to the effect that nearly all, if not all, the land within the boundaries of the Crown Point claim, except a small wedge-shaped fraction of that claim in which the discovery was made and in which its discovery shaft was sunk, was covered by valid prior locations, which were held by corporations that were either owned or controlled by a corporation called the Woods Investment Company, and that the little tract on which the discovery shaft of the Crown Point was sunk was covered by the Sierra Nevada mining claim at the time when the discovery upon which the plaintiff relies was made. He also introduced evidence that the Gold Coin Mining & Leasing Company was one of the corporations controlled by the Woods Company, and that the Columbine-Victor Tunnel Company, which owned the Bonanza lode mining claim, was another; that one John McConaghy, the superintendent of the Gold Coin Mining Company, while working for that company within the boundaries of the Bonanza claim on November 12, 1896, discovered the lode or vein on which the Louisa claim was located; that thereupon the Columbine-Victor Tunnel Company, on November 18, 1896, relinquished to the United States $^{28}/_{1000}$ of an acre of land within the limits of the Bonanza claim, upon which the discovery shaft of the Louisa claim was subsequently located; and that thereafter, on November 19, 1896, McConaghy posted the location notice of the Louisa claim over the point where he had discovered this vein in the Bonanza claim. The defendant also proved that the corporations controlled by the Woods Investment Company relinquished several other small tracts of land within the boundaries of the Louisa claim; that McConaghy marked the boundaries of that claim, and complied with all the formal requirements of the law and the customs of miners in order to establish a valid mining claim; and that he afterwards conveyed his right and title thereto to the defendant. As the defendant was proceeding with the introduction of his evidence relative to the Louisa claim, the court inquired of one of his counsel what evidence he had in reserve; and the latter answered that he had more evidence of the same character, and evidence that the Bonanza Mining Company had undisputed title to that part of the Bonanza claim on which the Louisa discovery shaft was located before that tract was relinquished; that the same situation existed relative to the title of the other claims whose owners had relinquished small tracts within the limits of the Louisa; and that he proposed

to show the acts of the officers of these companies which evidenced the abandonment of these tracts to the government, and the formal acts and records of the corporations whereby the latter subsequently ratified the acts of their officers, and various proceedings in the government land office. The court then turned to one of the counsel for the plaintiff, and asked him if he intended to offer evidence in rebuttal, and, if so, to what effect. He replied that he offered to show the invalidity of the Louisa location; that the relinquishments upon which that claim rested were all made after the discovery and location of the Crown Point claim; that they were fraudulent and void; that the parties that made them subsequently filed claims for the relinquished tracts adverse to that of the defendant; that the Sierra Nevada mining claim, which was the only prior claim that included within its boundaries the small tract of land in which the discovery of the Crown Point lode was made, and in which the discovery shaft of the Crown Point claim was located, had been abandoned before that discovery; and that this tract was unappropriated public land of the United States when the locators of the Crown Point discovered the vein and sunk their shaft within it. The court refused to receive any of the evidence, and instructed the jury to return a verdict that neither of the parties to the action was entitled to the title or to the possession of the property in controversy.

We are unable to perceive why the facts which the plaintiff offered to prove, if established to the satisfaction of the jury, would not have sustained its claim, at least to the extent of the small wedge-shaped tract of land on which its discovery shaft was located. This tract was not within the boundaries of any other mining claim, except the Sierra Nevada; and if, as the plaintiff offered to show, the Sierra Nevada claim had been abandoned before Ray and Wilcox made their discovery and located their claim, and if, as the Crown Point Company also proposed to prove, the Louisa claim was fraudulent and void because the relinquishments on which it rested were not made until after the discovery and location of the Crown Point claim, so that the discovery and discovery shaft of the Louisa were within the Bonanza claim, and hence void, because not upon unappropriated public land at the time the discovery of the Crown Point lode was made (Erwin v. Perego, 35 C. C. A. 482, 93 Fed. 608, 612; Belk v. Meagher, 104 U. S. 279, 284; Gwillim v. Donnellan, 115 U. S. 45, 51, 5 Sup. Ct. 1110), then the discovery of the Crown Point was on unappropriated public land, and its discovery and location vested in its locators all the unappropriated public land within its limits, and every vein whose apex was found in that free public land within the surface lines of the claim extended downward vertically, whether the surface thus secured was all or only a part of the tract within the boundary lines of the claim. Rev. St. § 2326; Del Monte Mining & Milling Co. v. Last Chance Mining & Milling Co., 171 U. S. 55, 77–80, 18 Sup. Ct. 895. On the other hand, if the owners of the Bonanza mining claim relinquished the tract on which the discovery shaft of the Louisa claim was sunk before the Louisa vein or lode was discovered, and if the Louisa vein was discovered within this free tract of public land, and duly located, before the discovery of the Crown

Point, the Louisa claim must take the wedge-shaped tract on which the discovery shaft of the Crown Point was located. The rejection of the evidence upon these issues necessitates another trial of the case, and it is useless to consider it further until all the competent testimony has been adduced, so that we can perceive what questions of law the facts of the case present, and what they eliminate. The judgment below is reversed, and the case is remanded to the court below, with directions to grant a new trial. The costs in this court will be equally divided between the parties.