[No. 4326.]

31   141
20a  206
20a  261

## Davis et al. v. Shepherd.

**1.  Mines  and  Mining — Pleading — Trespass — Extra  Lateral
        Rights.**

In an action of ejectment by the owner of a mining claim
against the owner of a conflicting claim a complaint, which al-
leges a trespass upon a vein apexing within the surface bounda-
ries and intersected by the end lines of plaintiff's claim, is suffi-
cient to cover a trespass upon plaintiff's extra lateral rights in
the vein.  Such trespass may have been upon the vein in ground
underneath the surface boundaries of plaintiff's claim extended
downward vertically, or without such boundaries.

**2.  Same—Motion to Make More Definite—Waiver.**

In an action of ejectment where the complaint alleges a tres-

pass upon the vein of a mining claim, if for any reason the defendant desires to have the complaint more definite as to the point where the alleged trespass was committed, a motion to that effect should be interposed before answering to the merits. After answering to the merits it is too late to raise the question.

3. Mines and Mining—Ejectment—Pleading—Mineral Vein.

In an action of ejectment for trespass upon the vein of a patented mining claim it is not necessary for the complaint to allege that the vein contains minerals as that question cannot be raised collaterally. After patent the presumption must be that the vein or veins embraced within the claim are of the character which the law contemplates.

4. Mines and Mining—Width of Claim—End Lines.

Where the end lines of a mining claim are not at right angles with the side lines, the width of the claim is not measured by the length of the end lines, but its width is the distance between the side lines measured by a line at right angles.

5. Mines and Mining—Extra Lateral Rights.

The fact that defendant had located a claim upon the dip of a vein which claim was patented and a part of the vein was stoped out and removed before plaintiff located his claim the boundaries of which included the apex of the vein, does not change the fact that the vein below the point of such removal is the same as the one apexing within plaintiff's boundaries and does not destroy plaintiff's extra lateral rights in that portion of the vein below the point of removal.

6. Mines and Mining—Extra Lateral Rights.

Under the act of congress of 1866 the right to follow a vein upon its strike is limited to the lines of the survey purporting to embrace it, and where the apex of such vein in its course departs from either side line of the claim, the point where it crosses such side line marks the point where the right to follow it on its strike ceases, and extra lateral rights are limited accordingly.

7. Same—Estoppel.

Plaintiff and defendant owned adjoining mining claims. Defendant's shaft was located partly on each claim. Plaintiff gave defendant permission to work his claim through said shaft but warned him not to work on plaintiff's ground. Held, not to estop plaintiff to maintain an action of ejectment against defendant for trespass upon a vein apexing in plaintiff's claim.

8. Mines and Mining—Ejectment—Evidence.

In an action of ejectment for a trespass by defendant upon a vein apexing in plaintiff's claim, where plaintiff had sunk a shaft on the vein from its apex down to a stope extended from

defendant's workings, whether plaintiff's shaft was or was not dangerous to any one who might attempt to pass through it was immaterial to the issues between the parties and the exclusion of testimony offered by defendant as to the condition of the shaft, was not erroneous.

9. **Mines and Mining—Ejectment—Trespass—Expert Evidence.**

In an action of ejectment for a trespass by defendant upon a vein apexing in plaintiff's claim, where plaintiff had sunk a shaft along the vein from its apex to a stope extended from defendant's workings and sought to show that the vein along which the shaft was sunk was the same vein that defendant was working, a question by defendant to a witness as to whether or not the shaft had been constructed with a view of obliterating the relative position of the vein and ground surrounding and of concealing the vein, was properly excluded as the matters referred to were not such as required expert opinion testimony.

10. **Mines and Mining—Projecting Lines into Senior Locations— Extra Lateral Rights.**

A junior locator may project the end line of his claim across the surface of a senior location for the purpose of fixing the extra lateral rights to so much of the vein located as is subject to location, provided no forcible entry is made.

11. **Mines and Mining—Limitation—Veins Apexing Without the Boundary Lines.**

Limitation by adverse possession of a mining claim under claim and color of title for seven years could not extend to that part of a vein apexing without the boundary lines of the claim under which the limitation is asserted.

12. **Instructions—Considered as a Whole.**

If instructions considered as a whole fully and correctly state the law of the case they are sufficient. The fact that a certain legal proposition is not contained in an instruction is not reversible error if the proposition is stated in another instruction.

13. **Instructions Requested—Covered by Instructions Given.**

It is not error to refuse instructions requested if they are substantially covered by the instructions given.

14. **Instructions—Immaterial.**

Instructions requested which are immaterial to the issue are properly refused.

15. **Same Evidence.**

It is not error to refuse instructions requested even though they correctly state the law, if there is no testimony bearing on the issue sought to be submitted to the jury by such instructions.

16. **Mines and Mining—Ejectment—Verdict.**

In an action of ejectment to determine the extra lateral rights in and to a vein as between conflicting claimants a verdict of the jury which designates what portion of the vein belongs to each claimant so that a judgment can be entered in accordance with their findings definitely fixing the rights of the parties to the matter in dispute is sufficiently specific to comply with the law in that respect.

17. **Mines and Mining—Ejectment—Damages—Verdict.**

In an action of ejectment for trespass upon a vein apexing in plaintiff's mining claim where plaintiff claimed damages for such trespass and the jury returned a verdict in plaintiff's favor but failed to assess any damage, and none was assessed by the judgment of the court, the defendant was not prejudiced by the failure to assess damages against him and cannot object to the verdict on that ground.

18. **Verdicts—Amendments.**

It was not error for the court to amend a verdict after the jury had been discharged by inserting the word "we" instead of the word "you" where it clearly appeared that the use of the word "you" by the jury was a mistake and that they intended to employ the word "we."

*Appeal from the District Court of Clear Creek County.*

The main controversy between the parties to this appeal is the question of extra lateral rights between the Refugee and Fairmount lode mining claims. There is a partial conflict between the surface boundaries of the two claims. The owner of the Refugee brought an action in ejectment against the owner and lessee of the Fairmount, claiming that defendants were working a vein apexing in Refugee ground. From a judgment for plaintiff the defendants appeal. The data necessary for an understanding of the questions discussed appear in the opinion.

Mr. GEORGE S. REDD, Mr. GEORGE W. TAYLOR and Mr. I. N. SMITH, for appellants.

Messrs. BULLIS & WILLIAMS, for appellee.

Mr. Justice Gabbert delivered the opinion of the court.

The complaint alleged, in substance, that the defendants wrongfully and unlawfully entered upon the Refugee lode mining claim, and on the vein or veins thereof crossing the end lines and apexing within its boundaries, and wrongfully ousted and ejected the plaintiff therefrom. It is contended by counsel for appellant that the complaint does not state a cause of action based upon extra lateral rights. Two reasons are assigned in support of this claim: (1) That it only describes a vein within the boundaries of the Refugee extended downward vertically; and (2) it does not allege that this vein contains minerals. If rights to a mineral vein embraced in a mining location were limited as at common law, the first point made might be good. A vein properly located is part and parcel of the location within which it is embraced throughout its entire depth, within the limits defined by law, even though on its downward course it enters an adjacent location.—Sec. 2322, Rev. Stats. U. S.

The complaint alleges a trespass upon a vein apexing within the surface boundaries of the Refugee claim and intersected by its end lines. According to these averments, under the law fixing the rights to this vein, such trespass may have been upon the vein in ground underneath the surface boundaries of the Fairmount claim extended downward vertically, or without such ground, within the boundaries of the Refugee. This, however, is not essentially material. The charge was a trespass upon a vein which was part and parcel of the Refugee. If for any reason it was desirable to have the complaint more definite, as to the point where the trespass was committed, a motion to that effect should have been

10

interposed. Having answered on the merits, it is too late to raise the question now.—*Rosenfeld v. Rosenfeld,* 21 Colo. 16. The Refugee is a patented claim. Before patent the question of whether the Refugee vein carried precious minerals in appreciable quantities might, in an appropriate action, have been a material question of fact, but after patent it cannot be raised collaterally. The government has granted the owner of the Refugee all veins the top or apex of which lie inside of the surface boundaries of the claim extended downward vertically, and after patent the presumption must be that the vein or veins embraced within the claim are of the character which the law contemplates.

According to the description of the Refugee in the complaint, it is asserted that the claim is of greater width than the law allows, and for this reason the validity of the patent is assailed. It is not necessary to determine what might be the effect upon the patent if this claim was correct, because it appears that it is not. The end lines are not at right angles with the side lines, and, therefore, do not represent the distance between them. The width of a mining claim, when that is the only question involved, is the distance between the side lines. Thus measured, the Refugee is not of greater width than the law permits.

The vein in controversy, except a small portion, apexes entirely within the boundaries of the Refugee claim. The Fairmount is the older location, having been located in the year 1869, on the dip of the vein, and subsequently patented. Before the location of the Refugee a considerable portion of the vein was worked out by the claimants of the Fairmount. Counsel for appellants contend that the stoping out of the mineral has broken the continuity of the vein, and that, therefore, the owner of the Refugee can

claim no extra lateral rights in that portion of the vein below such workings; and further claim that inasmuch as the Fairmount was located under the act relative to mining claims passed in 1866, that the Refugee has no extra lateral rights as against the Fairmount to the vein upon which that location is based. In short, that the owners of the latter are entitled to the vein for the full length of the claim without regard to its location with respect to the boundaries of the claim. .That a portion of the vein has been removed does not change the fact that the vein below the point of such removal is the same as the one apexing within the Refugee ground. That is the test to apply in determining the question of ownership as between the parties to this action.

Under the act of congress of 1866, the right to follow a vein upon its strike is limited to the lines of the survey purporting to embrace it. This question has been definitely settled by the supreme court of the United States,—*Mining Co. v. Tarbet,* 98 U. S. 463,—and it is unnecessary to more than briefly discuss it. The act contemplated a location *along* the vein, and hence the point at which the apex of such vein, in its course, departs from either side line of the claim, marks the point where the right to follow it on the strike under such location ceases, and extra lateral rights are limited accordingly.—*Wolfley v. Lebanon M. Co.,* 4 Colo. 112; *McCormick v. Varnes,* 2 Utah 355; 1 Lindley on Mines, §§ 53-60; Morrison's Mining Rights (10th ed.), 133.

It is next contended by counsel for appellants that appellee is estopped by his conduct from maintaining this action, because he disclaimed any interest in the vein now in controversy, in effect abandoned it, and misled the appellants to their injury and prejudice; and also that the court erred in refusing testimony in support of this defense. The record

wholly fails to disclose anything supporting this claim. One of the defendants was the owner and the other the lessee of the Fairmount. It appears that what is known as the Fairmount shaft was sunk partially upon both claims; that the defendants applied to the owner of the Refugee for leave to work the Fairmount property through this shaft, which was granted. Nowhere does it appear that the owner of the Refugee ever granted them any right to work the vein in controversy within the limits of that location, nor was there any testimony offered which tended to prove that fact, or that he disclaimed any interest in this vein. On the contrary, one of the appellants admits that the appellee told him he had no objection to his working the property through the shaft, but that he did not want him to work on Refugee ground, to which the witness replied that he did not want to. At this conversation appellee further stated to the appellant that he had a vein in the Refugee which he did not propose to let anybody work.

A shaft had been sunk on the vein from its apex on the Refugee down to a stope extended from workings on the Fairmount. On the trial of the cause counsel for appellants asked a witness whether or not this shaft was dangerous. The court sustained the objection, and this ruling is assigned as error. If the condition of this shaft could have been the subject of expert opinion evidence, it was wholly immaterial in this case. Whether the shaft was or was not dangerous to any one who might attempt to pass through it, could have no bearing whatever upon the issues between the parties. The exclusion of immaterial testimony is not error.

It was sought to establish, on the part of the appellee, that the vein upon which this shaft was sunk was the same which the appellants were work-

ing. Counsel for the latter asked a witness questions to the effect as to whether or not the shaft had been constructed with the view of obliterating what was disclosed with respect to the relative position of the vein and the ground surrounding, and if from the mode of construction there was anything to indicate an intention to conceal the vein. These questions were objected to, and the objections sustained, for the reason that it was not proper for a witness to give his opinion on these subjects. There was no error in this ruling. If this testimony was material, it only referred to matters which persons of average ordinary intelligence were capable or competent of determining for themselves, from the facts from which the inference sought to be established might be deduced.

The vein in its strike apexes within the Refugee ground, with the exception of a few feet across the corner of the Fairmount. The end lines of the Refugee are each some distance from this point. It is claimed that the vein crossing Fairmount ground breaks its continuity, and as we understand the argument of counsel, they contend that appellee can claim no extra lateral rights except upon the theory that he is permitted to construct imaginary end lines at the point where the vein in its strike crosses the boundaries of the Fairmount. This view is not tenable. The Refugee would take no portion of the vein apexing within the lines of the Fairmount, but the extra lateral rights to the vein outside would be determined by the end lines actually established, in connection with the boundaries of the Fairmount. In this connection it is urged that because the northerly end line of the Refugee is partially projected within the boundary lines of a prior claim, and the vein does not cross this line in ''free ground,'' as it is termed—that is to say, crosses such line within the

boundaries of a prior claim—that, therefore, it has no legal north end line. This proposition has been settled adversely to the contention of counsel for appellant, in *Del Monte M. Co. v. Last Chance M. Co.*, 171 U. S. 55. In that case the court had under consideration this question: "May any of the lines of a junior lode location be laid within, upon, or across the surface of a valid senior location for the purpose of defining for, or securing to, such junior location underground or extra lateral rights not in conflict with any rights of the senior location?" The court answered the question in the affirmative, subject to the qualification that no forcible entry is made. In other words, as applicable to the facts of this case, the decision of the court was that, subject to the qualification noticed, a junior locator may project the end line of his claim across the surface of a senior location for the purpose of fixing the extra lateral rights to so much of the vein located as is subject to location.

The instructions given are challenged, and exceptions were also taken to the refusal of the court to give those requested by appellants. The court instructed the jury to the effect that, although the Fairmount was patented before the Refugee, that the Fairmount would not include any part of the Refugee vein, which had its apex outside of the surface boundary lines of the Fairmount, and that so much of the vein as apexed outside of the Fairmount and within the boundaries of the Refugee belonged to the latter. This instruction is challenged upon the ground that it nullified the defense of the statute of limitations interposed by appellants to the effect that they and their grantors had been in the possession of the Fairmount for more than seven years immediately prior to the time this action was commenced under claim and color of title in good

faith, and during that period had paid all taxes legally assessed upon the premises. This defense could only extend to that portion of the premises which was embraced within the boundaries of the claim, and to such rights as attached thereto. All that part of the vein in controversy which apexed without the boundaries of the Fairmount was not a part of that property, for reasons already given, and, consequently, was not covered by any written evidence of title under which they claim the ownership of the premises.

It is also contended that these instructions were erroneous because they ignored the proposition of the union of veins. Instructions must be considered as a whole, and we find that the court, in another instruction, gave the law fully and correctly on this subject.

Numerous instructions requested were refused, which we shall not attempt to notice in detail. They were either substantially covered by those which the court gave of its own motion, were immaterial to the issues, or the questions thereby raised have been disposed of by the previous questions determined; and as to the remainder, even if they correctly state the law, we are unable to determine their materiality, because no testimony is pointed out bearing on the issues which it was sought thereby to submit to the jury. It is not erroneous to refuse instructions which have already been given, or which do not relate to any issue involved. Neither can we determine whether an instruction refused was prejudicial error, unless our attention is directed to testimony from which it appears that some issue was involved which justified such instruction.

The jury returned a verdict which was to the effect that they found the issues joined in favor of the plaintiff, and that the vein in controversy apexed

within the boundaries of the Refugee claim, except that portion apexing between a point on the side line of the Fairmount eight .feet westerly from the southeasterly corner of that claim, and the point where it passes through the easterly end line of the latter, and that plaintiff is entitled to the possession of so much of the vein as apexed within the boundaries of the Refugee, even though in its downward course it might depart from a perpendicular so as to extend outside of the vertical side lines of that claim, "except so much of the said vein as *you* find the apex thereof to be in survey 195a (the Fairmount)." Counsel for appellant contend that this verdict does not comply with the provisions of the code in two respects: (1) It does not describe the premises in controversy with sufficient certainty; and (2) although a claim for damages was made by plaintiff, the verdict was silent on this question. The purpose of a verdict is to respond to and decide the issues between the parties to such an extent and with a sufficient degree of certainty, so that judgment can be entered thereon settling the rights of the parties under the issues presented.—*Stafford v. King,* 30 Tex. 257; 94 Am. Dec. 304. The verdict is sufficiently specific to comply with the law in this respect. The real subject-matter of controversy was a vein; the verdict of the jury has designated what portion belongs to each claim, so that a judgment could be entered in accordance with their findings on this subject, definitely fixing the rights of the parties to the matter in dispute, and all its incidents.

It is true the plaintiff claimed damages, but because none were returned by the jury is not a matter of which the defendants can complain. They were not prejudiced by the action of the court in failing to assess damages. After the verdict was received and filed and the jury discharged, the court

permitted it to be amended by inserting the word "we" instead of "you," in that portion above quoted. This was not error; it was patent that the jury intended to employ the word "we" instead of "you," and the court had the power, even if it were necessary to make any correction, to so amend the verdict as to make it show the real intention of the jury, as exhibited by the verdict itself.—*Schoolfield v. Brunton,* 20 Colo. 139.

The final question relates to the alleged misconduct of the jury. It presents no proposition of sufficient merit or importance to constitute reversible error.

The judgment of the district court is affirmed.

*Affirmed.*