### WORK MIN. & MILL. CO. v. DOCTOR JACK POT MINING CO.†

(Circuit Court of Appeals, Eighth Circuit. March 2, 1912.)

No. 3,468.

1. MINES AND MINERALS (§ 44*)—LODE MINING CLAIMS—PATENTS—CONCLUSIVENESS.

Under the Colorado statutes, which require one filing a lode mining claim to post a notice at the point of discovery and sink a shaft within 60 days after the discovery, a patent to a claim concludes, on collateral attack, an assertion that the claim was located and patented without the discovery of any vein, lode, or ledge.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 130; Dec. Dig. § 44.*

Conclusiveness of patents for mining claims, see notes to Carson City Gold & Silver Min. Co. v. North Star Mining Co., 28 C. C. A. 346; Bunker Hill & Sullivan Mining & Concentrating Co. v. Empire State-Idaho Mining & Developing Co., 48 C. C. A. 674.]

2. MINES AND MINERALS (§ 44*)—LODE MINING CLAIMS—PATENTS—CONCLUSIVENESS.

A federal patent to a lode mining claim is conclusive, as against collateral attack, on every question properly within the jurisdiction of the Land Department.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 130; Dec. Dig. § 44.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied June 10, 1912.

**3.** MINES AND MINERALS (§ 40*)—FEDERAL PATENTS—DUTY OF LAND DEPARTMENT.

In issuing a federal patent to a lode mining claim, the Land Department must take notice, not only of acts of Congress, but of local laws and regulations.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 115; Dec. Dig. § 40.*]

**4.** MINES AND MINERALS (§ 43*)—LODE MINING CLAIMS—BOUNDARIES.

Where a lode mining claim is longer than it is wide, the end lines of the claim as fixed in the patent are prima facie at least the true end lines, as affecting extralateral rights.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 125–129; Dec. Dig. § 43.*]

In Error to the Circuit Court of the United States for the District of Colorado.

Ejectment by the Doctor Jack Pot Mining Company against the Work Mining & Milling Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Henry C. Hall and Charles S. Thomas (Wm. H. Bryant, George L. Nye, and Wm. P. Malburn, on the brief), for plaintiff in error.

William V. Hodges (Clayton C. Dorsey, on the brief), for defendant in error.

Before HOOK, Circuit Judge, and RINER and REED, District Judges.

RINER, District Judge. This is an action in ejectment to recover the possession of certain mining ground situated in the Cripple Creek mining district, Teller county, Colo., and for damages. The Doctor Jack Pot Mining Company was the plaintiff and the Work Mining & Milling Company was the defendant in the Circuit Court, and for convenience will be so referred to hereafter.

Three separate causes of action were stated in the complaint, based upon three different veins or ore bodies. The second cause of action was dismissed by the plaintiff at the trial, and the case proceeded to verdict and judgment upon the first and third causes of action. In its first cause of action plaintiff avers that it and its grantors at all times since the 17th of October, 1901, were the owners in fee, and that the plaintiff at the time the complaint was filed was the owner in fee and entitled to the occupation and possession of a certain lode mining claim in the Cripple Creek mining district known as the Lucky Corner lode mining claim, United States survey No. 9,209; that on the 17th of October, 1901, the United States duly issued to the grantors of the plaintiff its patent for the mining claim above referred to, who thereafter by mesne conveyances conveyed and transferred to the plaintiff the surface of the Lucky Corner lode mining claim; that the patent and conveyances above mentioned conveyed to the plaintiff the surface of the Lucky Corner lode mining claim, together with all veins, lodes, and ledges throughout their entire depths, the tops or apices of which lie inside the surface lines thereof extended downward vertically, although such veins, lodes, or ledges may so far depart from the per-

pendicular in their course downward as to extend outside the vertical side lines of said premises, confined to such portions thereof as lie between vertical planes drawn downward through the end lines of said Lucky Corner lode mining claim so continued in their own direction that such planes will intersect such exterior parts of such veins, lodes, or ledges, and that the end lines are parallel.

It is further averred in the first cause of action that in mining and developing said claim the plaintiff and its grantors opened and discovered a vein, lode, or ledge, commonly called No. 1 vein, which is not the vein, lode, or ledge discovered in the discovery shaft of said claim, and which has its top or apex inside of the surface boundaries of the Lucky Corner lode mining claim, and runs in a northeasterly and southwesterly direction and crosses on its strike at its apex, the westerly side line 4–5 of said claim at a point on said side line about 260 feet N., 18° 55′ E. from the southwest corner No. 4 of said claim and the northerly end line 6–1 of said claim at a point about 80 feet N. 71° 05′ W. from the northeast corner No. 1 of the claim; that by virtue of the patent and mesne conveyances the plaintiff is the owner of so much of said vein as lies between vertical planes, one drawn downward through said end line extended in its own direction and the other parallel thereto drawn downward at the point on said westerly side line 4–5, about 260 feet north from the southeast corner No. 4 of said claim, where said vein at its apex crosses said side line, throughout the entire depth of said vein, the distance between said vertical planes being about 760 feet; that between said vertical planes so drawn said vein on its dip extends northwesterly to a great depth and beneath and beyond the westerly and northerly side lines of the claim.

It is further averred that while the plaintiff and its grantors were the owners and in possession and entitled to the possession of the said Lucky Corner lode mining claim, and the vein, lode, or ledge above described, the defendant, on or about the 1st day of November, 1901, entered upon the vein and ousted the plaintiff and its grantors therefrom, and from the possession thereof, and that it has ever since continued, and still continues, to hold possession thereof, to the damage of the plaintiff in the sum of $1,000,000. It is further averred in the complaint that the defendant had extracted ores from the vein and lode owned by the plaintiff to the amount and value of $950,000. It is also averred that the grantors of the plaintiff had duly assigned, transferred, and set over to the plaintiff all claims and demands, actions, and causes of action which its grantors had for ores and minerals extracted.

In the third cause of action the plaintiff makes the same allegations as to possession and ownership of the Lucky Corner lode mining claim and to all veins, lodes, and ledges having their tops or apices inside the surface lines of said claim extended downward vertically, as set out in the first cause of action, and then avers that it is the owner of a certain vein called the "Timber Drift vein," having its top or apex inside the surface boundaries of the plaintiff's claim throughout its entire depth where it lies between vertical planes parallel to the end

lines of the claim extended in their own direction through the points on the side lines where the apex of the Timber Drift vein crosses the side lines, that the part or segment of the vein on its dip extends northerly and westerly to a great depth between the westerly and northerly side lines of plaintiff's claim. It is then averred that the Timber Drift vein like the number one vein described in the first cause of action, is not the vein, lode, or ledge discovered in the discovery shaft of the claim. The same averments as to the possession of number one vein set out in the first cause of action are repeated in this cause of action as to the Timber Drift vein.

The defendant in its answer admits that a patent was issued to the grantors of the plaintiff for the Lucky Corner lode mining claim, as averred in the complaint, denies that the end lines are parallel, but admits the existence of the number one vein, and that a portion of its top or apex is within the patented boundaries of the Lucky Corner claim. It admits that the No. 1 vein extends upon its dip northwesterly to a great depth and beyond the westerly and northerly side lines of the Lucky Corner claim, but denies that the plaintiff is the owner of that part of the vein lying westerly and outside of or beyond the Lucky Corner claim. The same admissions and denials are made with respect to the Timber Drift vein.

It is further averred in the answer that the top or apices of the several veins, lodes, and ledges described and set forth in the complaint and all other veins, lodes, or ledges known to exist within the surface boundaries of the Lucky Corner claim intersect in their strike or longitudinal course at their top or apices the side lines of the said claim and that said side lines are not parallel to each other, and for that reason the plaintiff is not the owner of nor entitled to the possession of any part of either the No. 1 vein or Timber Drift vein found or lying beneath or within the boundary lines of the Little Clara lode mining claim owned by the defendant.

Four affirmative defenses were also set out in the answer, and numbered 4, 5, 6, and 7. A demurrer to the affirmative defenses was sustained as to the fourth and seventh, and overruled as to the fifth and sixth. In the fourth affirmative defense it is averred, in substance, that in the place designated in the patent as the discovery cut of the Lucky Corner claim there never was disclosed any crevice, vein, lode, ledge, or valuable deposit, and that no discovery of any vein, lode, or ledge was ever made within the surface boundaries of the Lucky Corner lode mining claim, prior to the entry or patent thereof, and that the plaintiff did not by virtue of its patent from the government acquire any ownership or the right to follow any vein, lode, or ledge, the top or apex whereof may thereafter have been found within the vertical boundaries of the Lucky Corner claim beyond or across vertical planes drawn downward through the surface boundaries into the premises of the defendant. In the seventh affirmative defense it is averred that long prior to the alleged discovery by the plaintiff of the existence of any of the veins, lodes, or ledges described in the complaint, or of any other vein, lode, or ledge in the Lucky Corner claim, the defendant by its lessees, beneath the vertical boundaries of the Little Clara claim

owned by the defendants, uncovered a lode or deposit of valuable gold and silver bearing ore known and called the Basalt Flat vein, being an entirely distinct and different vein from any of the veins, lodes, or ledges described in the complaint, and that by its lessees the defendant, long prior to the discovery of any of the veins in the Lucky Corner claim, extracted, mined, shipped, and sold the ore therefrom.

The court also sustained a motion of the plaintiff to strike out those portions of the answers to the first and third causes of action denying that any vein, lode, or ledge whatever was discovered in the Lucky Corner discovery works. The plaintiff filed its reply, and, the parties having stipulated that the issue of title, ownership, and right of possession of the veins and ores in controversy should alone be determined at this trial, leaving the question of damages to be determined by a future proceeding, the case proceeded to trial upon the issues not eliminated by the court in its rulings upon the demurrer and motion to strike.

Forty errors are assigned, consisting of exceptions taken to the rulings of the court upon the demurrer, the motion to strike, the admission and rejection of evidence, and to the giving and refusing to give certain instructions. We think a determination of certain legal principles applicable to the questions presented by the record will settle all the points in controversy without taking up and discussing separately each assignment of error, although they have all been carefully considered.

[1] The principal question presented by the record, and upon which the rights of the parties largely depend, is whether the defendant had the right to show as matter of defense that the Lucky Corner claim was located and patented without the discovery of any vein, lode, or ledge, it being insisted by the defendant that such was the fact, and that, therefore, the Lucky Corner claim carried with it no extralateral rights. The question first arose upon the demurrer to the fourth affirmative defense, and again upon the motion to strike out parts of the first and third defenses, the motion for judgment at the close of the plaintiff's testimony, and upon the instructions requested by the defendant and refused by the court. If the defendant had the right to go into that question in its proofs and show, if it could, that such was the fact, then the judgment in this case must be reversed. On the other hand, if the patent establishes conclusively that such a vein existed in the discovery cut of the Lucky Corner claim prior to patent, then the patent conveyed, not only such rights as attached to that vein, but to all other veins or lodes apexing within the surface boundaries thereof.

[2, 3] It must be conceded that every question which was properly within the jurisdiction of the Land Department at the time the patent issued was finally determined, and is not open to collateral attack. As to all matters within its jurisdiction the judgment of the Land Department, as has been often decided, is that of a special tribunal, and is unassailable except by direct proceedings for its annulment or limitation. And the test of its jurisdiction is whether or not it has the power to enter upon the inquiry, and not whether its conclusions

were right or wrong. It becomes important, therefore, to notice what the miner must do, prior to its issuance, to secure a patent from the United States under the laws of the United States, the laws of the state and the regulations of the mining district wherein the mine is located. He must first make his location, which, as stated in Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735, "is not made by taking possession alone, but by working on the ground, recording and doing whatever else is required for that purpose by the acts of Congress and the local laws and regulations." So that, in addition to complying with the requirements of the acts of Congress, he must, in Colorado, comply also with the laws of that state in so far as they are not in conflict with the laws of the United States. Under the statutes of Colorado, he is required, first, to place at the point of discovery on the surface a notice containing the name of the lode, the name of the locator, and the date of discovery; second, within 60 days from the discovery he must sink a discovery shaft 10 feet deep, showing a well-defined crevice, the disclosure of a lode or vein in an open cut, cross-cut, or tunnel may be accepted instead of the 10-foot shaft: third, he is required to mark the surface boundaries by six posts, one at each corner and one at the center of each side, marked on the side or sides in towards the claim; fourth, within three months from the date of discovery, he must file a location certificate with the county recorder, giving a proper description of the claim, together with the name of the lode, the name of the locator, the date of location, the number of feet in length on each side of the center of the discovery shaft or cut and the general course of the lode. As there seems to be nothing in the Colorado statute in conflict with the laws of the United States, it follows that the Land Department at the time it issued the patent necessarily passed upon the question, not only as to whether there was a discovery upon the claim, but whether such discovery was in the discovery workings, as required by the laws of Colorado, because the Land Department must take notice, not only of the requirements of the acts of Congress, but the local laws and regulations of miners as well. Therefore, upon application for the patent, it became a question before the Land Department, to be determined by it, whether the applicant had complied with the requirements of both the laws of the United States and the state of Colorado. Kendall v. San Juan Mining Co., 144 U. S. 658–664, 12 Sup. Ct. 779, 36 L. Ed. 583.

The contention of plaintiff is that, after issuance of the patent, a denial of discovery prior thereto cannot impugn the validity of the patent; that the patent establishes conclusively the discovery of the apex of a vein in the discovery cut of the Lucky Corner claim prior to patent and the patent is prima facie evidence that the discovery vein does not extend transversely across the claim as patented; that by its terms the patent grants to the Lucky Corner claim the two veins in controversy and the right to follow them on their respective dips outside of the side lines of the Lucky Corner ground into the Little Clara territory for the purpose of mining the ore therein, and, furthermore, even if the general language of the denial can be construed as an affirmative allegation that the discovery vein has no dimensions

191 F.—40

outside ,of .the discovery cut wherein it is conclusively presumed in law to exist, and conceding that such allegation of fact be not immediately rebutted by some legal presumption, yet the allegation would not constitute a defense to the action for the reason that it would not show the lines described by the patentee as end lines were mistakenly designated; and also, if it be admitted that the discovery vein crosses neither end line nor side line, it does not necessarily follow that extralateral rights must be denied to the discovery vein, and certainly it does not follow that extralateral rights must be denied to secondary veins which, it is averred in the complaint and admitted in the answer, the veins in controversy are.

Taking into consideration the affirmative admissions and the failure to deny certain averments of the complaint, the answer, in effect, admits the patent, admits that the veins in question, or portions of them, apex in the Lucky Corner claim; admits that the end lines described in the patent are parallel, and that the end line planes, extended vertically to an intersection with the veins in controversy, embrace the ore bodies claimed by the plaintiff; admits that neither the Timber Drift vein nor the No. 1 vein is the discovery vein of the Lucky Corner claim, and then avers that the ore bodies in controversy are within the boundary lines of the Little Clara claim extended vertically downward; that the Little Clara was located prior to the Lucky Corner; that there is not and never was disclosed any vein, lode, or ledge in the discovery cut of the Lucky Corner, and that no discovery whatever was made upon the Lucky Corner claim prior to patent, and for that reason no extralateral rights attached to the two secondary veins apexing in plaintiff's ground. Whatever may have been the right of the defendant to raise the question, by protest or other appropriate proceeding, of no discovery within the patented ground prior to patent, that question was forever foreclosed when the patent issued, except by a direct proceeding to set aside the patent or to declare that the grantee therein held it in trust for some party having a better right. In Uinta Tunnel Mining & Transportation Co. v. Creede & Cripple Creek Mining & Milling Co., 119 Fed. 164, 57 C. C. A. 200, this court, speaking through Judge Sanborn, said:

"If the query were whether or not it is competent to show by proof outside the receiver's receipts or the patents that there had been no location of the patented claims or no discovery of lodes therein before they were entered for patent, there would be no doubt that a negative answer must be returned to the question, for the reason that this is an issue between the parties to a proceeding .before the Land Department which that tribunal necessarily considers and decides when it permits .entry of the lands, and its decisions of questions within its jurisdiction are impervious to collateral attack." King v. McAndrews, 111 Fed. 860, 50 C. C. A. 29; Calhoun Gold Mining Co. v. Ajax Gold Mining Co., 182 U. S. 499, 21 Sup. Ct. 885, 45 L. Ed. 1200.

Mr. Lindley in his work on Mines, § 305, states the rule thus:

"It is true that after a lode patent is issued the existence of an apex within the patented ground will be conclusively presumed."

In New Dunderberg Mining Co. v. Old, 79 Fed. 598, 25 C. C. A. 116, Judge Sanborn, delivering the opinion of the court, said:

"The patent which the department issued in 1876 was a judgment of that tribunal that no such claim did exist on May 10, 1872, and that no adverse rights would be affected by issuing it in accordance with the provisions of the act at that date. It is at the same time a judicial determination of these questions and the conveyance of the legal title to every lode or vein whose apex lay within the surface boundaries of the patented claim extended downward vertically. If this action of the Land Department resulted from fraud, mistake, or erroneous views of the law, a court of equity might set aside the patent, or declare it to be held in trust for him who had a better right. * * * Our conclusion is that a patent issued under and in accordance with the provisions of the act of May 10, 1872, * * * to a mining claim located before the passage of that act conveys the legal title to every vein or lode of mineral whose apex is within its surface lines extended downward vertically, and is not subject to collateral attack in an action at law, either on the ground that there was a claim adverse to that patent when the act of 1872 was passed or on the ground that adverse rights were affected by its issue under the provisions of that act." Mining Co. v. Campbell, 17 Colo. 272, 29 Pac. 513; Doe v. Waterloo Mining Co. (C. C.) 54 Fed. 935; Lindley on Mines, § 277.

In Davis v. Shephard, 31 Colo. 146, 72 Pac. 58, the court in the course of its opinion said:

"Before patent the question of whether the Refugee vein carried precious minerals in appreciable quantities might, in an appropriate action, have been a material question of fact, but after patent it cannot be raised collaterally. The government has granted the owner of the Refugee all veins the top or apex of which lie inside of the surface boundary of the claim extended downward vertically, and, after patent, the presumption must be that the vein or veins embraced within the claim are of the character which the law contemplates." Grand Central Mining Co. v. Mammoth Co., 29 Utah, 490, 83 Pac. 668; Carson City Gold & Silver Mining Co. v. North Star Mining Co., 83 Fed. 658, 28 C. C. A. 333.

In Talbott v. King, 6 Mont. 76, 9 Pac. 434, the Supreme Court of Montana said:

"Before a mining claim patent can be issued, it must be established in the Land Department by competent evidence that there has been a discovery within the boundaries of the claim and a notice and location according to law; that the necessary work has been done; and that all preliminary and precedent acts have been performed which authorize and justify the issuance of a patent. The issuance of the patent conclusively proves all these precedent acts and facts which the Land Department must find to exist, before the patent can rightfully issue. The act of the department, therefore, in issuing a patent, is an adjudication, and, like a judgment, is final as to all matters necessarily included in and determined by it. What, then, does a patent to a mining claim prove? First, that the lands bounded and described therein are mineral lands; second, that a discovery and location within said boundaries has been made according to law; and, third, that the necessary amount of work has been performed thereon, and that all preliminary and precedent acts necessary, in order to authorize and justify the issuance of the patent, have been performed as the law requires."

Many other authorities to the same effect might be cited—indeed, we find none holding a contrary view.

Our conclusion is that the rulings of the Circuit Court on the demurrers to the fourth and seventh affirmative defenses and the motion to strike out certain portions of the first and third defenses were right, and will have to be sustained.

It is earnestly insisted by the defendant that the conclusive presumptions of law that follow from the issuance of a patent for a

mining claim ought not to be applied in this case because there is no surface conflict between the Lucky Corner and Little Clara claims, and therefore the defendant had no chance to adverse the Lucky Corner application for patent. It might have filed a protest against the application for a patent, in which it could have set up the matters here relied upon, and, if these were found to be true, the Land Department would have declined to issue a patent, for discovery is one of the prerequisites to be established by satisfactory proof before a patent can issue. However that may be, and granting it to be true, as contended by the defendant, that because of its inability to adverse the Lucky Corner application for the reason that there is no surface conflict, it is a fault of the law, and presents a case in which the court is powerless to afford relief. As stated by Mr. Justice Brewer in Del Monte Mining Co. v. Last Chance Mining Co., 171 U. S. 66, 18 Sup. Ct. 899 (43 L. Ed. 72):

"If cases arise for which Congress has made no provision, the courts cannot supply the defect."

The patent in this case granted to the owners of the Lucky Corner claim:

"All that portion of the said Lucky Corner vein, lode or ledge and all other veins, lodes or ledges throughout their entire length the tops or apexes of which lie inside of the surface boundary lines of said granted premises in said lot No. 9,209, extended downward vertically although such veins, lodes or ledges in their downward course may so far depart from a perpendicular as to extend outside the vertical side lines of said premises."

The authorities are uniform that such a grant is authorized by the mining laws. Crown Point Mining Co. v. Buck, 97 Fed. 465, 38 C. C. A. 278; New Dunderberg v. Old, 79 Fed. 604, 25 C. C. A. 116; Del Monte v. Last Chance, 171 U. S. 55, 18 Sup. Ct. 895, 43 L. Ed. 72. A mining right, as was said in Last Chance Mining Co. v. Bunker Hill & Sullivan Min. & C. Co., 131 Fed. 585, 66 C. C. A. 306, "is an integral one and is precisely the same as to all that belongs to its location, its surface and all veins or lodes apexing within it and all not apexing elsewhere found within the surface lines extended vertically downward, as well as the extralateral rights defined by section 2322 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1425]."

[4] The defendant insists that it does not attack the patent of the Lucky Corner claim, yet it contends, assuming the facts pleaded by it, that, as there was no discovery prior to patent, no extralateral rights were acquired thereby to any other, or secondary, veins found within the surface boundaries of the claim. To sustain this contention the court would necessarily have to find that the evidence before the Land Department showing a compliance with the requirements of the statute was false and the patent fraudulently obtained. This, as we have already seen, cannot be done, except in a direct proceeding to set aside the patent. But it is insisted by the defendant that in determining the extralateral rights and defining their boundaries we must find the true end lines of the claim, and, if there was in fact no discovery vein outside of the discovery cut, where it must be pre-

sumed to exist, then it follows that no line of the claim is intersected by the discovery vein. Therefore the end lines cannot be determined and the extralateral rights to veins or lodes found within the claim cannot be bounded. As already suggested, the fact that a discovery vein existed in the discovery cut must, for the purposes of this case, be conclusively presumed, and prima facie at least the end lines of the claim as fixed in the patent are the true end lines, and, in the absence of evidence showing that the discovery vein instead of running lengthwise of the claim in fact crosses opposite side lines of the claim, the end lines as fixed by the patent must prevail; and this for the reason that, the claim being longer than it is wide, it is entirely fair to assume that the locator will take all of the length of the vein he can. In Enterprise Mining Co. v. Rico-Aspen Mining Co., 167 U. S. 115, 17 Sup. Ct. 765 (42 L. Ed. 96), Mr. Justice Brewer, speaking for the Supreme Court, said: "The presumption, of course, would be that the vein ran lengthwise and not crosswise of the claim as located." As suggested by counsel for the plaintiff, the establishment of the end lines by the patent is part of the administrative action of the Land Department and must be taken as correct until the contrary is made to appear; and, as the defendant seeks to question the correctness of the end lines as fixed by the patent, the burden is upon it to show that the end lines therein described are not the true end lines of the claim. While it is competent to show that the discovery vein, instead of running lengthwise of the claim, runs transversely across the claim, thereby showing that the end lines have been mistakenly laid, and that the side lines described in the patent are in fact end lines and the end lines the true side lines of the claim (King v. Amy & Silversmith Mining Co., 152 U. S. 222, 14 Sup. Ct. 510, 38 L. Ed. 419), yet the burden, as the court instructed the jury, is upon the defendant to establish that fact. The end lines as fixed in the patent fix the limits beyond which the owner of a mining claim cannot go, upon either a discovery or secondary vein, and also fix the boundary lines within which extralateral rights may be exercised in following the vein upon its dip, but it does not follow that to secure extralateral rights the vein must extend from end line to end line or, for that matter, intersect either end line, if it lies lengthwise of the claim. As said in Ajax G. M. Co. v. Hilkey, 31 Colo. 131, 72 Pac. 447, 62 L. R. A. 555, 102 Am. St. Rep. 23:

"The extent of the right depends upon the length of the apex, and the extralateral rights are measured not necessarily by the end lines—and only so when the vein passes across both end lines—but by bounding planes drawn parallel to the end lines passing through the claim at the points where it enters into, and departs from, the same. It would seem, therefore, necessarily to follow that the extralateral right depends inter alia upon the extent of the apex within the surface lines, and, while the end lines of the claim as fixed by the location are the end lines of all veins apexing within its exterior boundaries, the planes which bound such rights of different veins may be as different as the extent of their respective apices, though all such planes must be drawn vertically downward parallel with the end lines. It makes no difference in what portion of the patented claim the apex is. Its extralateral rights under this rule can be easily ascertained. The apex of a secondary vein need not be in the same portion as is the apex of the discovery vein. The statute does not say so."

In that case the discovery vein intersected one end line and on its course followed lengthwise of the claim for some distance and then departed through a side line, and the contention was made that no extralateral rights could be claimed for secondary veins apexing in the patented boundaries of the claim beyond the point where the discovery vein departed from the side line. This contention was rejected by the court, and it was held that the apex of a secondary vein need not be in the same portion of the claim as the apex of the discovery vein and that for all veins, both discovery and secondary, the owner. of a mining claim has extralateral rights for so much thereof as apex within his surface boundary lines.

Finding no error in the record that will warrant a reversal of the judgment, it is affirmed.