# CALHOUN GOLD MINING COMPANY *v.* AJAX GOLD MINING COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF COLORADO.

No. 195.  Argued March 13, 14, 1901.—Decided May 27, 1901.

The rights conferred upon the locators of mining locations by Rev. Stat. § 2322, are not subject to the right of way expressed in § 2323, and are not limited by § 2336.

As to § 2336, by giving to the oldest or prior location, where veins unite, all ore or mineral within the space of intersection, and the vein below the point of union, the prior location takes no more, notwithstanding that § 2322 gives to such prior location the exclusive right of possession and enjoyment of all the surface included within the limits of the location, and of all veins, lodes and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward, vertically.  *Held* that § 2336 does not conflict with § 2332, but supplements it.

A locator is not confined to the vein upon which he based his location, and upon which the discovery was made.

A patent is not simply a grant for the vein, but a location gives to the locator something more than the right to the vein which is the subject of the location.

Patents are proof of the discovery.  They relate back to the location of the claims, and cannot be collaterally attacked.

THE case is stated in the opinion of the court.

*Mr. W. E. So Relle* for plaintiff in error.

*Mr. Joseph C. Helm* for defendant in error.  *Mr. Ernest A. Colburn* and *Mr. Charles H. Dudley* were on his brief.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This action was brought in one of the District Courts of the State of Colorado by the defendant in error to recover damages from plaintiff in error for certain trespasses on, and to restrain it from removing ore from ground claimed to be within the

boundaries of, the mining claims of defendant in error. The answer of plaintiff in error justified the trespasses and asserted a right to the ore by reason of the ownership of another mining claim and the ownership of a certain tunnel site.

The rights of the parties are based on and their determination hence involves the construction of the following sections of the Revised Statutes of the United States, empowering the location of mining claims:

" SEC. 2322. The locators of all mining locations heretofore made or which shall hereafter be made, on any mineral vein, lode, or ledge, situated on the public domain, their heirs and assigns, where no adverse claim exists on the tenth of May, eighteen hundred and seventy-two, so long as they comply with the laws of the United States, and with state, territorial and local regulations not in conflict with the laws of the United States governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations. But their right of possession to such outside parts of such veins or ledges shall be confined to such portions thereof as lie between vertical planes drawn downward as above described, through the end lines of their locations, so continued in their own direction that such planes will intersect such exterior parts of such veins or ledges. And nothing in this section shall authorize the locator or possessor of a vein or lode which extends in its downward course beyond the vertical lines of his claim to enter upon the surface of a claim owned or possessed by another.

" SEC. 2323. Where a tunnel is run for the development of a vein or lode, or for the discovery of mines, the owners of such tunnel shall have the right of possession of all veins or lodes within three thousand feet from the face of such tunnel on the lines thereof, not previously known to exist, discovered in such tunnel, to the same extent as if discovered from the surface;

and location on the line of such tunnel of veins or lodes not appearing on the surface, made by other parties after the commencement of the tunnel, and while the same is being prosecuted with reasonable diligence, shall be invalid; but failure to prosecute the work on the tunnel for six months shall be considered as an abandonment of the right to all undiscovered veins on the line of such tunnel."

" SEC. 2336. Where two or more veins intersect or cross each other, priority of title shall govern, and such prior location shall be entitled to all ore or mineral contained within the space of intersection; but the subsequent location shall have the right of way through the space of intersection for the purposes of the convenient working of the mine. And where two or more veins unite, the oldest or prior location shall take the vein below the point of union, including all the space of intersection."

The especial controversy is whether the rights conferred by section 2322 are subject to the right of way expressed in section 2323 and limited by section 2336. Or, in other words, as to the latter section, whether by giving to the oldest or prior location, where veins unite, " all ore or mineral contained within the space of intersection," and " the vein below the point of union," the prior location takes no more, notwithstanding that section 2322 gives to such prior location " the exclusive right of possession and enjoyment of all the surface included within the lines" of the location, " and of all veins, lodes and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically."

The defendant in error denied such effect to sections 2323 and 2336, and brought this suit, as we have said, against plaintiff in error for damages and to restrain plaintiff in error from removing ore claimed to be within the boundaries of the claims of defendant in error, to which ore defendant in error claimed to be entitled by virtue of section 2322. The judgment of the lower court sustained the claim of the defendant in error and damages were awarded it, and the plaintiff in error was enjoined from further prosecuting work. An appeal was taken to the Supreme Court of the State and the judgment was affirmed. Thereupon this writ of error was allowed.

The annexed plat exhibits the relative location of the respective properties of the parties. The Champion location was dropped from the case. There is no controversy as to the validity of the respective locations, none as to the tunnel site or of the steps necessary to preserve it. Indeed, the facts are all stipulated, and that the respective locations are evidenced by patents, the defendant in error being the owner of the Monarch and the Mammoth Pearl, and the plaintiff in error the owner of the Victor Consolidated and the tunnel site. The facts are stated by the Supreme Court of the State as follows:

"That each of appellee's claims was located prior to either the lode claim or tunnel site of appellant; that the receiver's receipt on each of the claims of appellee issued prior to the

location of the tunnel site and prior to the issuance of receiver's receipt on the Victor Consolidated; that the patents upon the lode claims of appellee issued prior to the patent on the lode claim of appellant; that the patent to the apex issued prior to the location of the tunnel site and on the Mammoth Pearl and Monarch subsequent to such location; that the vein of the Victor Consolidated was discovered and located from the surface, was not known to exist prior to such discovery, extends throughout the entire length of that claim, and on its strike crosses each of the veins of the claims of appellee upon which they were respectively discovered and located; that the tunnel cuts numerous blind veins underneath the surface of the claims of appellee, which do not appear upon the surface and were not known to exist prior to the location of the tunnel; that the vein of the Victor Consolidated was cut in this tunnel underneath the claims of appellee and ore of the value of four hundred dollars removed therefrom. It also appears that the patents upon the lode claims of appellee embrace the conflict with the Victor Consolidated without any reservation as to either surface or veins, and in this respect conform to the receiver's receipts upon such claims; that the patent on the Victor Consolidated excludes the surface in conflict with the claims of appellee and all veins having their apex within such conflict, which are the same exceptions contained in the receiver's receipt for that claim; that the portal to the Ithaca tunnel site was at the date of its location on public domain; that work thereon was prosecuted diligently, and that the location of such tunnel was in all respects regular; that all necessary steps were taken by appellant to locate the blind veins cut in such tunnel, which are in controversy in this case; that the record titles of the claims of appellee are vested in it, and the record titles of the Victor Consolidated, the Ithaca tunnel site, the blind veins discovered therein underneath the claims of appellee, are vested in the appellant. The record discloses that appellant offered testimony tending to prove that at the date of the location of its tunnel site mineral in place had not been discovered on the Monarch and Mammoth Pearl lode claims."

The assignments of error present the following propositions

which it is stipulated the case involves and to which the decision may be directed:

" First. Whether or not the Ithaca tunnel (the tunnel claimed by plaintiff in error) is entitled to a right of way through defendant in error's lode claims.

" Second. Whether or not plaintiff in error has acquired by virtue of said tunnel site location the ownership and right to the possession of the blind veins cut therein, to wit, veins or lodes not appearing on the surface and not known to exist prior to the date of location of said tunnel site.

" Third. Whether or not plaintiff in error is the owner and entitled to the ore contained in the vein of its Victor Consolidated claim, within the surface boundaries and across lode claims of defendant in error.

" Fourth. Whether or not plaintiff in error should have been allowed to introduce evidence for the purpose of showing that there was no discovery of mineral in place on the Monarch and Mammoth Pearl claims of defendant in error prior to the location of said tunnel site."

The third proposition involves the relation of sections 2322 and 2336. It is first discussed by plaintiff in error, and is given the most prominence in the argument and we, therefore, give it precedence in the order of discussion. It presents for the first time in this court the rights of a junior location of a cross vein within the side lines of a senior location under section 2336. Prior to the decision by the Supreme Court of Colorado in the case at bar that court had decided that the junior location was " entitled to all of the ore found on his vein within the side lines of the senior location, except at the space of intersection of the two veins." *Branagan* v. *Dulaney*, (1885) 8 Col. 408; *Lee* v. *Stahl*, (1886) 9 Col. 208; *Morgenson* v. *Middlesex M. & M. Co.*, (1887) 11 Col. 176; *Lee* v. *Stahl*, 13 Col. 174. In *Coffee* v. *Emigh*, (1890) 15 Col. 184, it was held that the rule laid down in the foregoing cases had become established law. The claims of the plaintiff in error were located after the decisions, and it is contended that the rule laid down by them became a rule of property in the State, and it is earnestly urged that to reverse the rule now would take from plaintiff in error that which it

"had reason to believe was a vested right in the Victor Consolidated vein."

There are serious objections to accepting that consequence as determinative of our judgment. We might by doing so confirm titles in Colorado but we might disturb them elsewhere. The statute construed is a Federal one, being a law not only for Colorado but for all of the mining States, and, therefore, a rule for all, not a rule for one, must be declared. Besides what consideration should have been given to prior cases, the Supreme Court of the State was better able to judge than we are. It may be that the repose of titles in the State was best effected by the reversal of the prior cases. At any rate, a Federal statute has more than a local application, and until construed by this court cannot be said to have an established meaning. The necessity of this is illustrated, if it need illustration, from the different view taken of sections 2322 and 2336 in California, Arizona and Montana, from that taken in the prior Colorado cases. The Supreme Courts respectively of those States and that Territory have adjudged a superiority of right to the cross veins to be in the senior location. Manifestly, on account of this difference if for no other, this court must interpret the sections independently of local considerations. And in doing so we do not find in the sections much ambiguity so far as the issue raised by the record is concerned; indeed, not even much necessity for explanation. Section 2336 does not conflict with section 2322, but supplements it. Section 2336 imposes a servitude upon the senior location, but does not otherwise affect the exclusive rights given the senior location. It gives a right of way to the junior location. To what extent, however, there may be some ambiguity; whether only through the space of the intersection of the veins, as held by the Supreme Courts of California, Arizona and Montana, or through the space of intersection of the claims, as held by the Supreme Court of Colorado in the case at bar. It is not necessary to determine between these views. One of them is certainly correct, and therefore the contention of the plaintiff in error is not correct, and more than that it is not necessary to decide on this record. A complete interpretation of the sections would, of course, determine

between those views, but on that determination other rights than those submitted for judgment may be passed upon, and we prefer therefore to reserve our opinion.

There was some contrariety of views in the cases on other points. There was discussion as to whether veins cross on their strike or their dip, and it was held that they could cross on both strike and dip, but as to the exact application of section 2336 to either there was some disagreement.

The Supreme Court of Arizona said: "Congress had in mind, at the time of the enactment of the law of 1872, that, as mining rights then stood, A's lode might legally cross B's lode on the strike, and whether on the dip or not, makes no difference; and section 2336 was designed to define the rights of A and B in the space of intersection." *Watervale Mining Co.* v. *Leach*, 33 Pac. Rep. 418, 424.

The Supreme Court of California held in *Wilhelm* v. *Silvester*, 101 California, 358, that the provisions of the section could readily be construed as intending to protect the rights of old ledge locations. And speaking of veins intersecting on their dip, said, "moreover, there is strong reason for thinking that such an intersection was the very one in mind of Congress when it passed section 2336; for in that section, and speaking of the same subject, it says that 'where two or more veins *unite*, the oldest or prior location shall take the vein *below* the point of union,' and if the other kind of intersection (on the strike) was in the minds of the legislators at that time they would not have used the word 'below;' for 'below' would not apply at all to a union on the strike ol two veins, such as the appellant's rights depend on in the case at bar." But the Chief Justice of the State, concurring in the result, observed:

"I think, however, that too much is conceded, both in the opinion of the court and in the argument of counsel for respondent, in assuming that the provisions of § 2336 cannot be applied to locations made since the passage of the mining law of 1872 on veins which intersect upon their strike, without bringing it in conflict with the plain terms of § 2322. This wholly unwarranted assumption has been the source of all the trouble and difficulty which the land office and some of the

state courts have encountered in their attempts to construe provisions of a statute which are in perfect harmony, but which have been erroneously supposed to be inconsistent."

The Supreme Court of Colorado concurred in the conclusions of the courts of Arizona and California, and expressed its own view as follows:

" Our conclusion is that the provisions of § 2336 apply to locations made under the act of 1872, as well as before; p. 616, refer to the intersection or crossing of veins either upon their strike or dip; that the space of intersection in determining the ownership of ore within such space, means either intersection of veins or conflicting claims, according to the facts in each particular case, and grants a right of way to the junior claimant for the convenient working of his mine through such space upon the veins (underneath the surface) which he owns or controls outside of that space. This construction renders the two sections entirely harmonious, gives effect to every clause and part of each, and in so far as § 2336 regulates or in any manner provides for rights as between conflicting claims, it applies only to intersections consistent with all the provisions of § 2322."

See for the views of the Supreme Court of Montana, *Pardee* v. *Murray*, 4 Montana, 234.

2. The other assignments of error relate to rights claimed by plaintiff in error by the location of the tunnel site, and present the questions whether such location gave to the plaintiff in error the following rights: of way through the lode claims of the defendant in error; of possession of the blind veins cut by the tunnel underneath the claims of the defendant in error.

The plaintiff in error asserts the right of way for its tunnel under section 2323 by implication, and from that implication, and the rule it contends for as to cross veins, deduces its right to all of the blind veins. The contention as to cross veins we have answered, and the deduction as to blind veins is not justified. The section contemplates that tunnels may be run for the development of veins or lodes, for the discovery of mines, gives a right of possession of such veins or lodes, if not previously known to exist, and makes locations on the surface after the commencement of the tunnel invalid. There is no implication

of a displacement of surface locations made before the commencement of the tunnel. Indeed, there is a necessary implication of their preservation. And there can be no implication of a conflict with the rights given by section 2322. The exclusiveness of those rights we have declared. The tunnel can only be. run in subordination to them. How else can section 2322 be given effect? There are no exceptions to its language. The locators "of any mineral veins, lode or ledge" are given not only "an exclusive right of possession and enjoyment" of all the surface included within the lines of their locations, but "*of all veins, lodes and ledges throughout their entire depth,* the top or apex of which lies inside of such surface lines extended downward vertically." . A locator therefore is not confined to the vein upon which he based his location and upon which the discovery was made. "All veins or lodes having their apices within the planes of the surface lines extended downward .are his, and possession of the surface is possession of all such veins or lodes within the prescribed limitations." The Laws of Mines and Mining, page 442, by Barringer & Adams.

Under the old law the miner "located the *lode.* Under the new (the act of 1872) he must locate a piece of land containing the top or apex of the lode. While the vein is still the principal thing, in that it is for the sake of the vein that the location is made, the location must be of a piece of land including the top or apex of the vein. If he make such a location, containing the top or apex of his discovered lode, he will be entitled to all other lodes having their tops or apices within their surface boundaries." Lindsay on Mines, sec. 71.

And this court said, speaking by Mr. Justice Brewer, in *Campbell* v. *Ellet,* 167 U. S. 116:

"But the patent is not simply a grant of the vein, for, as stated in the section, 'a patent for any land claimed and located for valuable deposits may be obtained in the following manner.' It must also be noticed that section 2322, in respect to locators, gives them the exclusive right of possession and enjoyment of all the surface within the lines of their locations, and all veins, lodes and ledges, the tops or apices of which are inside such lines. So that a location gives to the locator something more

than the right to the vein which is the occasion of the location." See also *Del Monte Mining & Milling Co.* v. *Last Chance Mining & Milling Co.*, 171 U. S. 55.

The only condition is that the veins shall apex within the surface lines. It is not competent for us to add any other condition. Blind veins are not excepted, and we cannot except them. They are included in the description, "all veins" and belong to the surface location.

3. The same reasoning disposes of the claim of plaintiff in error to the right of way for its tunnel through the ground of defendant in error, so far as the right of way is based on the statutes of the United States. So far as it is based on the statutes of Colorado it is disposed of by their interpretation by the Supreme Court of Colorado, and, expressing it, the court said:

" It is contended by counsel for appellant that, under sec. 2338, Rev. Stat. U. S. and sec. 3141, Mills' Ann. Stat. ; 59 Pac. Rep. 607, 617, it is entitled to such right. The first of these sections provides that, in the absence of necessary legislation by Congress, the legislature of a State may provide rules for working mines involving easements, drainage, and other necessary means to their complete development; and that these conditions shall be fully expressed in the patent. The section of Mills referred to provides that a tunnel claim located in accordance with its provisions shall have the right of way through lodes which may lie in its course ; but it will be observed that this section only refers to tunnels located for the purpose of discovery, and if any of its provisions are still in force, which appears to be doubted in *Ellet* v. *Campbell, supra,* they can have no application to the case at bar, because the section of the Revised Statutes only provides for easements for the development of mines, and the section of Mills relied upon does not attempt to confer any such rights, but is limited to the one purpose of discovery. In this respect it has been clearly superseded by the act of Congress, so that, if appellant is entitled to the right claimed, it must attach by virtue of some provision of this act."

4. An assignment of error is based upon an offer of plaintiff in error to prove, that at the time of the location of the Ithaca tunnel site, no ore had been discovered in two of the patented

claims of the defendant in error, to wit, the Monarch and the Mammoth Pearl. The ruling was right. The patents were proof of the discovery and related back to the date of the locations of the claims. The patents could not be collaterally attacked. This has been decided so often that a citation of cases is unnecessary.

*Judgment affirmed.*