BAILLIE et al. v. LARSON et al.

(Circuit Court, D. Idaho, N. D. June 6, 1905.)

1. MINES—PUBLIC LANDS—STATE LAWS.

Under Rev. St. U. S. § 2338 [U. S. Comp. St. 1901, p. 1436], providing that, as a condition of sale of mineral lands, the local Legislature of any state or territory may provide rules for working mines, involving easements, drainage, and other necessary means to their complete development, the state of Idaho was authorized to pass Act March 15, 1899 (5 Sess. Laws, p. 442), granting to an owner of ground, with a mining tunnel located thereon, the right to run the same through the claims of other parties, and providing for the payment of all "actual damages or injury done to the owner of the claims crossed" by such tunnel.

2. SAME—EMINENT DOMAIN—MINING CLAIMS—TUNNEL RIGHTS—PUBLIC USE.

Rev. St. Idaho 1887, § 5210, as amended by Act March 3, 1903 (7 Sess. Laws, p. 203), declaring that tunnels and other means of working mines are declared to be public uses, within the statutes relating to eminent domain, and Act March 15, 1899 (5 Sess. Laws, p. 442), granting to any owner of ground with a tunnel located thereon the right to run the same through the claims of others on payment of all actual damages or injury done to the owner of the claims crossed by the tunnel, are not unconstitutional, as a deprivation of property without due process of law, in violation of the fourteenth amendment of the federal Constitution, in that the construction of a mining tunnel is in fact a private, and not a public, use.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 886; vol. 18, Cent. Dig. Eminent Domain, § 79.]

Heyburn & Batting and E. J. Hunter, for complainants.

Walter A. Jones, for defendants.

BEATTY, District Judge. The very important question involved is the right of a party to run a mining tunnel through the mining premises of another party.

On May 11, 1905, the defendants in this action commenced proceedings in the state court against the complainants for the condemnation of a tunnel right through the latter's mining claims. On May 16th these complainants demurred, and also caused the case to be removed to this court. On May 13th complainants commenced this action, asking an order to restrain defendants from running their tunnel, already commenced, through complainants' ground. They allege that defendants are mining and carrying away "rock, ores, and other things of value" from their premises, but I am convinced that no ore or thing of value is being taken. If this were so, it would be easy to protect complainants against loss, but they have expressly declined all protection except by injunction. Also I am convinced that this tunnel cannot damage complainants, but, rather, might prove a benefit, by the development of their ground. The only ground upon which a restraining order can be justified is the naked legal right of complainants to entirely exclude defendants from their premises. It is most earnestly urged that this right is so absolute that it is substantially beyond the discretion of the court to refuse it. It is also said that if this relief is not speedily granted the defendants may extend their tunnel through the premises, and be beyond the court's jurisdiction. The question

involved is too important and far too intricate for inconsiderate determination, but it is not admitted that the result suggested must follow.. If complainants are now entitled to a restraining order, they would be entitled to an order restraining defendants from using the tunnel even after its completion, especially as they have commenced these proceedings. Their rights must be measured by their action, and cannot be controlled by the court's delay. Neither can heed be given to the suggestion that this is a struggle between the weak and the strong. While the court is never without sympathy for the deserving weak, the law must run its course.

It appears that defendants base their right to run this tunnel upon section 2323, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1426], granting tunnel rights, and upon the Constitution and laws of this state providing for easements to mining properties.

In Calhoun G. M. Co. v. Ajax G. M. Co., 182 U. S. 499, 21 Sup. Ct. 885, 45 L. Ed. 1200, the claim of the locator of a tunnel site under said action to run his tunnel through a prior mining location was directly involved, and was determined adversely to the claim. While section 2322 [U. S. Comp. St. 1901, p. 1425], in express terms, grants to the "locator of all mining locations" only "the exclusive right of possession and enjoyment of all surface included within the lines of their locations and of all veins, lodes and ledges throughout their entire depth the top or apex of which lies inside of such surface lines extended downward vertically," the courts have reached the conclusion that such locators own everything lying perpendicularly under such surface, excepting veins apexing without the same. In accordance with this doctrine the court on page 509 of 182 U. S., page 890 of 21 Sup. Ct., 45 L. Ed. 1200, says:

"The same reasoning disposes of the claim of plaintiff in error to the right of way for its tunnel through the ground of defendant in error, so far as the right is based on the statutes of the United States. So far as it is based on the statutes of Colorado, it is disposed of by their interpretation by the Supreme Court of Colorado."

The effect of this ruling seems to be that in pursuance of section 2338, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1436], a state may enact such laws for mining easements, which, under the construction of state courts, might grant the tunnel rights claimed by these defendants.

The state enactments on this subject which appear to be in force, are: (1) Act of January 12, 1877 (Rev. St. 1887, §§ 3130–3142), of which sections 3132–3134 and 3140, 3141 are amended by act of March 9, 1899 (5 Sess. Laws, p. 350). By said sections 3130, 3131, the owner of a mining claim is granted certain easements, including tunnel rights through other mining claims, "upon compliance with the provision of this chapter" for condemnation of such easements. (2) An act "concerning mining tunnels," of March 15, 1899 (5 Sess. Laws, p. 442), grants to any owner of ground with a tunnel located thereon the right to run the same through the claims of other parties, and provides for the payment of all "actual damages or injury done to the owner of the claims crossed" by the tunnel. (3) The Constitution of the state, by section 14, art. 1, de-

clares that the necessary use of land for the drainage or working of mining tunnels and otherwise is "a public use, and subject to the regulation and control of the state." Private property may be taken for public use, but "not until a just compensation to be ascertained in a manner prescribed by law, shall be paid therefor." And (4) under the title "Eminent Domain," Rev. St. 1887, § 5210, amended by Act March 3, 1903 (7 Sess. Laws, p. 203), tunnels and other means of working mines are defined as "public uses."

It is useless to seek, through discussion, the intent of these enactments. They design to grant the owner of mining property the right to run a tunnel to it through the property of other parties, and they denominate such an easement a "public use." Have the people of Idaho the right under the delegation of power to them by said section 2338, Rev. St. U. S., or otherwise, to enact such laws? I think this question is answered in the affirmative by the Supreme Court, by its decision of May 15, 1905, in Clark v. Nash, just received in the advance sheets (25 Sup. Ct. 676, 49 L. Ed. 1085). Clark and his codefendants owned an irrigating ditch for their lands. Nash owned land beyond them, and asked to have their ditch so enlarged as to convey water through it to his land. The court says:

"The plaintiffs in error contend that the proposed use of the enlarged ditch across their land for the purpose of conveying water to the land of the defendant in error alone is not a public use, and that therefore the defendant in error has no constitutional or other right to condemn the land, or any portion of it. * * * They argue that, although the use of water in the state of Utah for the purposes of mining or irrigation or manufacturing may be a public use, where the right to use it is common to the public, yet that no individual has the right to condemn land for the purpose of conveying water in ditches across his neighbor's land for the purpose of irrigating his own land alone, even when there is, as in this case, a state statute permitting it. * * * But whether a statute of a state permitting condemnation by an individual for the purpose of obtaining water for his land or for mining should be held to be a condemnation for a public use, and therefore a valid enactment, may depend upon a number of considerations, relating to the situation of the state, and its possibilities for land cultivation, or the successful prosecution of its mining or other industries."

It is further said that a public, as distinguished from a private, use, may often depend upon some peculiar conditions of the soil or climate, or other peculiarity of the state, and upon many different facts surrounding the subject, and that the people of the state and its courts must be familiar with such facts and with the necessity of the situation, and that such consideration should have influence. It is concluded:

"But we do not desire to be misunderstood by this decision as approving of the broad proposition that private property may be taken in all cases where the taking may promote the public interest and tend to develop the natural resources of the state. We simply say that in this particular case, and upon the facts stated in the findings of the court, and having reference to the conditions already stated, we are of opinion that the use is a public one, although the taking of the right of way is for the purpose simply of thereby obtaining the water for an individual, where it is absolutely necessary to enable him to make any use whatever of his land."

If the right claimed in that case can be held a public use, and the statutes upon which it is based can be sustained as constitution-

al, no good reason can be assigned why the claim involved in this case, and the Idaho laws upon which it rests, should not also be so held and sustained. True, in that case the "absolute necessity" of the easement to enable the party to "make any use whatever of his land" had its influence with the court. So the absolute necessity of this tunnel may be urged here. The defendants might, at great expense and inconvenience, go a long distance around through vacant ground, if it could be found, but the same might be said of the ditch claimant. When necessity is made a basis, the degree thereof becomes an element. What the degree must be, to justify the right, can be resolved, perhaps, only by a comparison of the necessity of one with the injury to the other party. Again, to make a public use depend upon the many interested, is neither a safe or just rule. It should rather be upon some principle. The same conditions or necessities applying to the many or to an individual should be followed by like rights to each. Such seems to be the tendency of some of the later rulings, and only on such principle can they be explained. The conclusion must be, and is, that the laws of this state grant the defendants the right they claim.

But admitting that such is the intent of the state laws, complainants claim that they are in conflict with the fourteenth United States constitutional amendment. As this proposition is as much applicable in the case of Clark v. Nash, 25 Sup. Ct. 676, 49 L. Ed. 1085, as in this, it must be inferred that the court concluded that no such conflict existed; and, as we cannot infer that the decision was one of oversight, no further discussion of this question will be indulged.

But one decision of our state Supreme Court (Latah County v. Peterson, 3 Idaho, 398, 29 Pac. 1089, 16 L. R. A. 81) bearing upon this subject has been found. It sustains, as constitutional, section 933, Rev. St. 1887, providing for private roadways, and this was in the interest of an individual.

It is the law that the owner of land entirely surrounded by that of his neighbors may force an outlet. Why may not the same law of necessity apply to mining property, when so located that easements on other properties must be permitted, or the value of the property be practically destroyed?

Other decisions bearing upon the question involved have been cited, but discussion of them is foreborne because it is thought that the case of Clark v. Nash, 25 Sup. Ct. 676, 49 L. Ed. ——, controls. Whether defendants can avail themselves of this right until after they shall have complied with the statutes for condemnation of such right is a question which occurs to me, but, as it has not been discussed, little more than suggesting it will now be done. Said section 3131, Rev. St. Idaho 1887, provides for the right "upon compliance with the provisions of this chapter," which include condemnation procedure. The section of our Constitution mentioned also provides that the right shall not accrue "until a just compensation to be ascertained in a manner prescribed by law, shall be paid therefor." The said later act of March 15, 1899, granting tunnel rights only, is silent as to how or when they must be acquired, and

provides only that the owner of the tunnel shall be liable for the actual damages or injury caused by it. Does this intend, as to tunnels, to repeal the act for condemnation proceedings? Even if it does, would it not be in conflict with the constitutional provision noted?

While inclined to think that condemnation proceedings should proceed possession, I shall for the present delay issuing a restraining order, for several reasons: (1) I am convinced that the tunnel is doing no material, if any, injury to complainants' property. (2) That defendants are amply able to respond in damages for any injury resulting. (3) There is some question whether complainants have not assented to the running of the tunnel. Defendants say they did. Complainants deny it, but it is evident they knew what was being done, and took no steps to object until after defendants commenced their condemnation proceedings; and to these they have interposed a demurrer, and 'thus delay. There are most important questions involved, which will not be finally settled by this court, and it will do all it can to have them settled as soon as possible by a higher court. If the defendants move with all the celerity they can to prosecute the condemnation proceedings, or if complainants interpose delay thereto, I think I should not issue a restraining order; but think I should if the complainants interpose no objections to such proceedings, and defendants do. My action may be governed by that of the parties and their good faith in the matter, and I now reserve the right to act upon my own motion if I become convinced from the conduct of the parties that I should. I suppose a restraining order would put the case in a condition to have these weighty questions speedily reviewed, which may be the shorter route to a settlement.