[No. 1987]

H. E. CLARK AND E. L. STINGLEY, APPELLANTS, *v.* M. MITCHELL, G. E. SHANNON, AND A. A. CARION, RESPONDENTS.

1. MINES AND MINERALS—AGREEMENT TO RELOCATE MINING CLAIM—FAILURE TO PERFORM AGREEMENT.

Where a plaintiff, one of two coowners and locators of a mining claim, contracted with a defendant, whereby such defendant agreed to do the annual assessment work on the claim for the year 1909, and thus prevent a forfeiture, a trust relation was created; and when such defendant, in violation of his agreement, failed to do the work, and permitted a forfeiture, and then relocated the claim in the names of himself and two others, not including plaintiffs, plaintiffs could recover the relocated claim.

2. PRINCIPAL AND AGENT—RELOCATION OF CLAIM—EFFECT OF NOTICE TO AGENT.

Under an agreement between plaintiff and defendant M., by which the latter was to relocate a mining claim, in their joint names, defendant M. relocated the claim, but omitted plaintiff's name as a relocator and included the name of defendant S.: *Held*, that the ignorance of S. as to the agreement will not affect the right of plaintiff to enforce the agreement, as the location was made by M., and notice to an agent is notice to the principal.

3. MINES AND MINERALS—LOCATION OF CLAIM—NONCONTIGUOUS TERRITORY.

The right to extend the lines of a mining claim over and across ground belonging to a prior location, and to hold segregated pieces of ground within the exterior boundaries of the location, not exceeding the maximum area of 1,500 by 600 feet allowed by law, appears to be settled.

4. MINES AND MINERALS — LOCATION CERTIFICATE — CLERICAL ERROR.

The description of a mining claim in a location certificate read: "To SW. corner; thence northerly 500 ft. to N. side center post, 1,350 ft. to place of beginning": *Held*, that the failure to carry the boundary to the northwest corner was an apparent omission or clerical mistake if the claim was properly monumented at that corner.

5. MINES AND MINERALS — LOCATION CERTIFICATE — CLERICAL ERROR.

A location certificate is not required to be strictly exact, and an apparent clerical mistake in describing courses and boundaries will be corrected or ignored.

APPEAL from the Seventh Judicial District Court, Esmeralda County; *Peter J. Somers*, Judge.

Action by H. E. Clark and E. L. Stingley against M. Mitchell and others. Judgment for defendants and plaintiffs appeal. **Reversed,** and judgment rendered. Petition for rehearing. **Denied.**

The facts sufficiently appear in the opinion.

*Frank J. Hangs*, for Appellant:

Mitchell having obtained his information from Clark and having agreed to perform the annual labor on the Silver King Fraction claim, and after having started to perform such labor and entered into a fiduciary relation with Clark and Stingley, cannot be heard to say that the latter's title was defective and for that reason he took the ground for himself.

Noncontiguous portions of ground may be included in one location. (1 Lindley on Mines, 2d ed. p. 469, and authorities cited; *Empire M. Co.* v. *Bunker Hill M. Co.*, 121 Fed. 973, 114 Fed. 417; *Davis* v. *Shepard*, 72 Pac. 57; *State* v. *Court*, 65 Pac. 1020; *Flynn G. M. Co.* v. *Murphy*, 109 Pac. 851.)

The evidence is uncontradicted that Shannon and Carion had notice of the agreement between Clark and Mitchell to do the work on the Silver King Fraction. The findings of fact were all in favor of plaintiffs. (*Hurst* v. *Patchen*, 85 Fed. 816; *Lockhart* v. *Rollins*, 21 Pac. 413; *Utah M. Co.* v. *Dickert*, 21 Pac. 1002; *Sun Dance*

*M. Co.* v. *Frost*, 64 Pac. 435; *O'Neill* v. *Otero*, 113 Pac. 614; *Welland* v. *Huber*, 8 Nev. 203; Pomeroy, Eq. Juris. 3d ed. secs. 899, 918, 959, 1044, 1050.)

*Thompson, Morehouse & Thompson,* for Respondents:

See extracts from brief in Case No. 1984 (p. 447, *ante*), where points involved in this case are considered.

By the Court, TALBOT, C. J. :

The findings of fact in this action are set out with the findings in the case of H. E. Clark, one of the plaintiffs herein, against the same defendants (see page 447, *ante*), in the opinion this day filed in that case, which relates to the same property and agreement. Under the facts and the law as determined in that case, the judgment in this case must be reversed.

The claim and recovery by Clark in that action being for an undivided one-half interest in the Helen mining claim, which was a relocation of the Whirlwind No. 4, and the claim in this action being for an undivided three-fourths interest in the ground within the lines of the Silver King Fraction, and lapped by the Helen, the further question has arisen as to the extent of the recovery in this action. The Helen having been located in the names of the three defendants, instead of in the names of Clark and Mitchell, as agreed by Clark and Mitchell, it is said that there is no evidence in the statement showing that Shannon had any knowledge of the agreement between Clark and Mitchell, and consequently it is argued that Shannon is entitled to hold a one-third interest which could not be affected by the agreement of which he was not aware. If Shannon had made the location for himself, or by an agent who was not aware of the agreement, there might be some force in this contention; but, according to the evidence of Mitchell and Shannon, the location was made by Mitchell, who placed Shannon's name on the location notice, and consequently any rights Shannon obtained in the property were acquired through an agent who had knowledge, binding upon Shannon, that Mitchell

had agreed to do the work on the Silver King Fraction for a one-quarter interest, so as to preserve the rights of Clark and Stingley to the remaining three-quarters interest in that claim.   On the theory that notice to the agent is notice to the principal, and the agent being well aware that he had agreed to perform the work to protect from forfeiture the rights of Clark and Stingley, they are entitled to a judgment · for an undivided three-fourths interest accordingly.

In remanding a case it is seldom that this court will order the entry of a reverse judgment without a new trial, which should always be allowed when there is · any probability that new facts might be established which would materially affect the rights of litigants.   After the trials in these two cases, the findings are so well supported by the evidence, and by the testimony of the parties themselves, that we conclude that a new and expensive third trial could not in any way change the result, and would be only an unnecessary expense and hardship.   Consequently, the district court is directed to enter a judgment in favor of the plaintiffs for an undivided three-fourths interest in the piece of ground claimed by them which was within the boundaries of the Silver King Fraction, and described or demanded in the complaint.   If desired or requested by any of the parties the court may take evidence for the purpose of making a description of this piece of ground more specific in the judgment.

NORCROSS, J.: I concur.

## ON PETITION FOR REHEARING

By the Court, TALBOT, C. J.:

This case was considered in connection with the one of H. E. Clark against the same defendants, No. 1984, and the findings and decisions in both cases appear in this volume (pages 447–464 and 464–467).   After having given the petitions for rehearing careful consideration, we are still of the opinion that both cases should be remanded, but we will elaborate the decisions reached, and make the

directions to the district court more specific. · We adhere
to the conclusion that under the agreement between
Clark and Mitchell, by which Mitchell promised to do the
assessment work on the Silver King Fraction for a one-
quarter interest in that claim, the plaintiffs Clark and
Stingley are entitled to hold and recover an undivided
three-quarters interest in any ground relocated in the
name of the Helen which belonged to the Silver King
Fraction at the time that claim was forfeited at the end
of the year 1909 by the failure of Mitchell to do the work
on the Silver King Fraction claim, as he had agreed.    If
Mitchell had performed his agreement for doing the work
on the Silver King Fraction for that year, and had thereby
preserved the claim from forfeiture, the three-quarters
interest retained by Clark and Stingley would have con-
tinued to exist only in the ground which actually belonged
to that location; Stingley would have continued to own
his half interest in it, and would have been entitled to no
interest in any other ground, as against Mitchell, and
Clark would have been entitled to no interest in any other
ground as against Mitchell under his agreement to do the
assessment work on that claim.

As to the ground embraced in the Silver King Fraction,
a fiduciary relation existed between Mitchell and Clark
under the agreement of Mitchell to do the assessment
work on that location, and incidentally Stingley is entitled
to recover his interest in that ground, because he was a
coowner with Clark, who had made the agreement with
Mitchell for the preservation and to prevent the for-
feiture of that claim.    A fiduciary relation also existed
between Clark and Mitchell in regard to the relocation
of the Whirlwind No. 4 as the Helen; but the law imposes
no obligation upon Mitchell in favor of Stingley as to any
ground excepting that which belonged to the Silver King
Fraction, and the fiduciary relation existing between
Clark and Mitchell, under the agreement for the doing
by Mitchell of the assessment work on the Silver King
Fraction was different, and related to different territory,
than the fiduciary relation existing between them under

their agreement in regard to the relocation of the Whirlwind No. 4, in which Stingley had no interest.

After agreeing to do the work on the Silver King Fraction, Mitchell became estopped to deny the right of Clark and Stingley to that location as claimed and possessed by them, and he could not, by relocating in the name of himself or others, deprive Clark and Stingley of their interest in that claim, whether the ground was segregated into two pieces by a prior location or not. He is not allowed to blow hot and cold in the same breath, and is estopped from contending that Clark and Stingley had no right to a segregated piece of ground which they claimed and possessed, and to protect which he agreed to do the annual work, and that by a relocation he could hold, not only his own interest, but any right or claim of Clark and Stingley to that part of the location.

As against Clark and Stingley, Carion and Shannon are also without any equity in ground which belonged to the Silver King Fraction, even if it be admitted that the exterior lines of that claim covered at the time of its location two noncontiguous unappropriated pieces of the public domain, for there was no agreement by Mitchell to include Carion in the relocation of ground belonging to the Silver King Fraction, or Shannon in any location, and they were charged with knowledge that Mitchell had agreed to do the work which would prevent a forfeiture and relocation of that claim.

The agreement of Mitchell to put Carion in the relocation of the Whirlwind No. 4 is not regarded as covering any ground which was a part of the Silver King Fraction. The location notice of the Silver King Fraction describes it as lying between the Whirlwind No. 4 and other locations. This notice states: "We claim all unlocated ground within our boundary monuments, which boundaries are marked by four corners and two side centers, consisting of posts four feet high. We claim all ground left within our boundaries when adjoining claims are properly surveyed in accordance with their respective locations."

Although neither suit is an action to define boundaries, and the principle of estoppel regarding the extent of ground applies to each when considered separately, it is apparent that as between the two cases, and the agreement to do the work on one claim and relocate the other, it is important to determine the boundaries of the territory which belonged to the Silver King Fraction, because Stingley's interest is limited to the ground which belonged to that claim, and Clark is entitled to a proportion of that ground different from his interest in the Helen as a relocation of the Whirlwind No. 4.

As the locators of the Silver King Fraction claimed the Whirlwind No. 4, and under the agreements between Clark and Mitchell for the doing of the assessment work on the Silver King Fraction and the relocation of the Whirlwind No. 4 Stingley is entitled to an interest only in the ground which belonged to the Silver King Fraction, and the other parties are entitled to a different proportionate interest in the Whirlwind territory covered by the Helen as a relocation of the Whirlwind No. 4, and including a part of the ground which belonged to the Silver King Fraction, the district court will determine the extent of the territory which belonged to the Silver King Fraction, if any of the parties deem the conflicting area to be of sufficient value or ask for such determination.

When the district court has awarded to Clark and Stingley an undivided three-quarters interest in the area which belonged to the Silver King Fraction, this ground may be considered as excluded from the judgment in the other action for an undivided one-half interest in favor of Clark in the remaining ground belonging to the Helen location.

In this action the trial court held that, notwithstanding the agreement with Mitchell to do the annual assessment work on the Silver King Fraction, the ground in controversy could not be recovered by the plaintiffs, because it was embraced in a piece of land within the exterior lines of the Silver King Fraction, which by a prior location was segregated from the piece of ground on which the

location notice was posted and the location work done on the Silver King Fraction. In the other action, by the plaintiff Clark against the same defendants, another judge presiding concluded that the end monuments of the Lime Point No. 1 claim, an adjoining location, were over about ninety feet too far on the Silver King Fraction, leaving a continuous strip of land belonging to the Silver King Fraction, and consequently held that claim was not cut into noncontiguous pieces.

It is said in the petition for the rehearing that we ought to determine whether noncontiguous pieces of ground, separated by a senior claim, may be held in one location. Since the decision in the Del Monte case, 171 U. S. 55, 18 Sup. Ct. 895, 43 L. Ed. 72, the earlier decisions of the land office in *Bimetallic M. Co.*, 15 Land Dec. Dept. Int. 309, and *Mabel Lode*, 26 Land Dec. Dept. Int. 675, have been overruled by the secretary of the interior. (*Hustler and New Year Lode Claims*, 29 Land Dec. Dept. Int. 668; *Hidee Gold Mining Co.*, 30 Land Dec. Dept. Int. 420.) And for a number of years the land office has been granting patents to noncontiguous pieces of ground embraced in the same claim and separated by a prior location. Under the later rulings of the department and the decisions of the courts, including the ones cited in the brief and by that eminent text-writer, Mr. Lindley, at sections 663 and 663a of the second edition of his work on Mines, the right to extend the lines of a mining location over and across the ground belonging to a prior location, and to hold segregated pieces of ground within the exterior boundaries of the location, not exceeding the maximum area of 1,500 by 600 feet allowed by law, and not conflicting with previously located claims, appears. to be settled. (*Crown Point* v. *Buck*, 38 C. C. A. 281, 97 Fed. 462; *Calhoun M. Co.* v. *Ajax*, 182 U. S. 499, 21 Sup. Ct. 885, 45 L. Ed. 1200.)

As it will be best to determine in this action the extent of the territory which belonged to the Silver King Fraction, if any of the parties require such determination, we refer to the conclusion of the district court in the

other action "that the call of the location certificate of the Whirlwind No. 4 for 500 feet from the southwest corner to north side center·post must be held to control in determining the exterior boundaries of the claim."

This location certificate states that J. M. Russell, Howard Russell, and E. J. Chute have located and claim "1,300 linear feet and horizontal measurement on the Whirlwind No. 4 lode, vein, ledge, or deposit along the vein thereof, with all its dips, angles, and variations as allowed by law, together with 300 feet on the south side and 300 feet on the north side of the middle of said vein at the surface, so far as can be determined from present developments, and all veins, lodes, ledges, or deposits and surface ground within the lines of said claim, 1,000 feet running westerly from the discovery monument, and 300 feet running easterly from the discovery monument; said discovery monument being situate upon said lode, vein, ledge, or deposit, and within the lines of said claim, in Hornsilver mining district, county of Esmeralda, and State of Nevada, described by metes and bounds as follows, to wit: Beginning at corner No. 1, the NE corner; thence southerly 400 ft. to SE cor.; thence westerly 650 ft. to south side center posts, 1,300 ft. to SW corner; thence northerly 500 ft. to N side center post, 1,350 ft. to place of beginning. All corner and side centers are marked with posts and stone monuments, with proper description of corner on each. This claim is joined on the south side by the Deyling claim and on the north side by the Valley View lode claim, and lies about 1,000 ft. south of the Lime Point."

The reading of the certificate convinces us that the failure to carry the boundary to the northwest corner was an omission or clerical mistake, and that the learned district judge followed too literally the words showing this omission, when other words in the certificate indicate an intention by the locators to claim the northwest corner, instead of failing to claim what properly would be the northwest corner of the claim, or failing to claim any ground northwest of the line running from the southwest

corner to the north side center. The call in the earlier part of the certificate for 1,300 linear feet along the vein, "with 300 feet on the south side and 300 feet on the north side of the middle of the vein," and with 1,000 feet running westerly from the discovery monument and 300 feet running easterly from the discovery monument, indicates an intention to claim more in width and length along the vein than would be embraced in the claim if the northwest corner were so eliminated.

After running from corner No. 1, the northeast corner, 400 feet southerly to the southeast corner, the writer of the certificate, in stating "thence westerly 650 feet to the south side center post, 1,300 feet to the southwest corner," evidently intended to describe the south side line as running from the southeast corner westerly 650 feet to the south side center post, and as running from the southeast corner westerly 1,300 feet to the southwest corner, the same as if the certificate had read, "from the southeast corner westerly 650 feet to the south side center post, thence westerly 650 feet to the southwest corner." From the wording it may be assumed that it was intended to use the same method in describing the north side line. The language after the words "southwest corner"—"thence northerly 500 feet to north side center post, 1,350 feet to the place of beginning"—indicates a mistake or omission to mention the northwest corner, because to run directly from the southwest corner to the north side center post would in effect be an impossibility, for the use of the words "north side center post" implies that there is a northwest corner to the west of the north side center post, and if such line were run directly as the boundary of the claim from the southwest corner to the north side center post, that post would become the northwest corner of the claim and could not be a side center post, for a corner post cannot be a side center post. If by omission of the west end line in the description, "northerly" instead of "westerly" was given as the course for the north side line, or "westerly" was used, as in one of the copies

in the record, the words "thence northerly 500 feet to north side center post, 1,350 feet to place of beginning," indicate an intention, after going 500 feet, to continue in a similar direction 850 feet further, and that it had been intended to run along the north side of the claim to the north side center post, and thence on to the place of beginning at the northeast corner of the claim. This apparent clerical mistake, made by omitting any reference to the northwest corner, should not deprive parties of their rights to valuable property, if the claim was actually located and staked at the northwest corner, as distinguished from the north side center.

We have held in *Ford* v. *Campbell*, 29 Nev. 578, that the making and recording of a certificate of location of a mining claim are not essential, and in *Gibson* v. *Hjul*, 32 Nev. 360, that the notice of location of a mining claim is not required to be strictly exact, and that the filing of a defective certificate of location does not invalidate the claim. It is the rule that apparent clerical mistakes or errors in describing courses and boundaries will be corrected or ignored. (*Daniel* v. *Princeton*, 22 S. W. 324, 15 Ky. L. Rep. 108; *Robertson* v. *Mooney*, 1 Tex. Civ. App. 379, 21 S. W. 143; *Lane* v. *Thompson*, 43 N. H. 320; *Lush* v. *Druse*, 4 Wend. 313; *Johnson* v. *Simpson*, 36 N. H. 91; *Gleeson* v. *Martin White M. Co.*, 13 Nev. 468; *Weed* v. *Abbott*, 51 Vt. 609; *Barnard* v. *Russell*, 19 Vt. 334; *Cornell* v. *Green*, 88 Fed. 821.) In the last two cases cited, "north" was read as "south."

The district court is directed to enter judgment in favor of the plaintiffs, Clark and Stingley, for an undivided three-quarters interest in the ground which belonged to the Silver King Fraction at the end of the year 1909, including any extralateral rights connected with that ground. Before entering such judgment, if any of the parties so desire and request, the district court will allow amendment of the pleadings to make the description and any issues relating thereto more definite, and by way of new trial as to any such issue hear evidence regarding the boundaries of the piece of ground to which the Silver

King Fraction was entitled at the end of the year 1909, in order that there may be a more definite description in the judgment.

The petition for rehearing is denied.

NORCROSS, J.: I concur.

MCCARRAN, J., having become a member of the court after the argument and submission of the case, did not participate in the foregoing opinions.