**Rush PETTWAY et al., Plaintiffs,**

v.

**AMERICAN CAST IRON PIPE COMPANY, Defendant.**

Civ. A. No. 66–315.

United States District Court,
N. D. Alabama, S. D.

Jan. 21, 1970.

Memorandum Opinion and Order
March 19, 1970.

Oscar W. Adams, Jr., Birmingham, Ala., Robert Belton, Charlotte, N. C., Jack Greenberg, New York City, for plaintiffs Rush Pettway, and others.

W. L. Williams, Jr., Birmingham, Ala., Stanley P. Hebert, Gen. Counsel, John de J. Pemberton, Deputy Gen. Counsel, David A. Zugschwerdt, Chief, Trial Section, and John F. Goemaat, E.E.O.C., Washington, D. C., for plaintiff Equal Employment Opportunity Comm.

James R. Forman, Jr., and Samuel H. Burr of Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., for defendant American Cast Iron Pipe Co.

## OPINION

LYNNE, Chief Judge.

The plaintiffs, having commenced this action against their employer, invoking the provisions of Title VII of the Civil Rights Act of 1964 [1], alleging various

1. 42 U.S.C. § 2000–e et seq.

acts of racial discrimination against themselves and the class which they claim to represent, filed a motion seeking to enjoin the defendant from vacating the offices of certain members of the Auxiliary Board and holding elections to fill their vacancies, and further for a declaratory judgment declaring that segregated boards now existing at the American Cast Iron Pipe Company (Acipco) plant are in violation of the 1964 Civil Rights Act. The plaintiffs further seek by their motion to require the defendant to reorganize its managerial and organizational structure under the Will of John J. Eagan without the requirement of segregated boards so that the Negro employees at Acipco will have equal authority with white employees with respect to management control, with all other incidents and benefits now accruing to white employees at Acipco.[2]

The Court, having heard and carefully considered the evidence presented at an open hearing, the exhibits submitted by the parties, and arguments of counsel, finds the following facts and states the following conclusions of law in the form of this Memorandum Decision.

An understanding of the Company's history and organization under the Plan and Codicil to the Will of Mr. John J. Eagan, is necessary in deciding whether or not a violation of Title VII with respect to the Board of Operatives and the Auxiliary Board has occurred in this case. Acipco, a corporation organized and incorporated under the laws of Georgia, with its principal office and production facilities located in Jefferson County, Alabama, has operated under a unique plan of corporate management known as the "Eagan Plan" for over forty-five years.

The Eagan Plan is a plan of cooperative industrial management conceived and put in effect by John Joseph Eagan, the founder of American Cast Iron Pipe Company, during his lifetime. The details of Mr. Eagan's plan to effectuate his ideal of cooperative effort between labor and management were first presented to the employees of Acipco in March of 1922 and were ratified and accepted by the employees in an election for that purpose. The Plan, as conceived by Mr. Eagan and presented to the employees, called for the control of the policies and conduct of the business to be vested in a Board of Directors elected by the stockholders. The day-to-day management of the business was placed in the hands of a "Board of Management", composed of the corporate officers elected by the Board of Directors. The "Board of Management" also serves as the "Executive Committee" of the Board of Directors between the meetings of the Board of Directors, a committee common to most corporate organizations. The distinguishing feature of the Eagan Plan is the "Board of Operatives" composed of nonsupervisory personnel elected by the employees of the Company. Since the creation of the Eagan Plan, an important function of the Board of Operatives has been to advise the Board of Management on matters affecting the employees' welfare and to provide a channel of communication between the management and the employees of the Company. Under the Eagan Plan, the Board of Operatives

---

2. By consent of the parties, the hearing held on October 20, 1969 was limited to the sole issue of the segregated Board of Operatives, and Auxiliary Board. Counsel for the plaintiffs further indicated during the course of the hearing that the issue pertaining to the oath of office required of all members of the Auxiliary Board and all other boards at Acipco was incidental to the primary question concerning the existence of segregated boards, that the employees named in the motion had refrained from taking the required oath as a condition to starting their present terms on the Auxiliary Board because of their apprehension that the language of the oath would prejudice their contention that the existence of segregated boards violated the Civil Rights Act of 1964. In view of the Court's decision on the basic issue pertaining to the Board of Operatives and the Auxiliary Board set out in this opinion, it appears, to the Court that the issue pertaining to the oath of office may be pretermitted at this time.

also nominates two of its members to the stockholders for election to the Board of Directors of Acipco.

The evidence is clear that Mr. Eagan during his lifetime established the following qualifications for election to the Board of Operatives. Candidates must be white men over twenty years of age, American citizens and employed in a non-supervisory capacity for three or more full years. All employees, without regard to race, were eligible to vote in the Board of Operatives elections.

No provision was made by Mr. Eagan in his original plan, as presented to the employees in 1922, for an Auxiliary Board of Negro employees. The genesis of the Auxiliary Board was the Board of Directors of the Acipco Colored YMCA. The Acipco Colored YMCA, which is no longer in existence, was maintained in the early history of the Company, as was a white YMCA, also having a Board of Directors. As an adjunct to this plan, Mr. Eagan assigned to the Board of Directors of the Acipco Colored YMCA, in addition to their regular duties, the additional function of advising the Board of Management and Board of Operatives on matters affecting the interests of the Negro employees. The members of the Colored YMCA Board and of its successor Board, the Auxiliary Board, were, and are, elected by vote of the Negro employees, and membership was, and is, restricted to Negro employees. The name of the "Colored YMCA Board" was changed in 1935 to the Colored Auxiliary to the Board of Operatives and to the YMCA Board of Management". The Eagan Plan contemplated that the Board of Directors of the Colored YMCA would be called into conference from time to time as an advisory board to the Board of Operatives and the Board of Management. It can be concluded that the advisory functions of the Colored YMCA would not have been originated except for the restriction to membership on the Board of Operatives to white men only.

Throughout the history of the Eagan Plan the two Boards, the Board of Operatives and the Auxiliary Board, have functioned separately under the express provisions of the Eagan Plan, the By-Laws of the Corporation, and the rules and regulations pertaining to the operation of the two Boards which implement Mr. Eagan's original plan.

The death of Mr. Eagan on March 30, 1924, brought about a significant change in the legal status of the Board of Operatives. The Codicil to Mr. Eagan's Will bequeathed all of the outstanding common stock of Acipco to the members of the Board of Management and members of the Board of Operatives, jointly, and their successors in office on said Boards, as Trustees for the benefit of the employees and future employees of the Company and their families. The Codicil to Mr. Eagan's Will clothed the members of the Board of Operatives with the capacity of joint stockholders and co-trustees of all the outstanding common stock of the American Cast Iron Pipe Company. The legal status of the Board of Operatives as a trustee and stockholder has been consistently recognized by the Court decisions interpreting Mr. Eagan's Codicil. Moore, et al. v. Hardin, Case No. 55715, 10th Jud.Cir. of Ala., in Equity, April 6, 1942 [Plaintiff's Exhibit 4]; Decree of Superior Court of Fulton County, Georgia, February 12, 1925 [Defendant's Exhibit 2]; Hoglan v. Moore, 219 Ala. 497, 122 So. 824 (1929); and Eagan v. Commissioner of Internal Revenue, 43 F.2d 881 (5th Cir., 1930). A similar status was not conferred upon the members of the Board of Directors of the Colored YMCA.

While the Codicil to Mr. Eagan's Will did not in express language restrict membership on the Board of Operatives to white men only, Mr. Eagan clearly intended that the qualifications imposed on eligibility to serve on the Board of Operatives during his lifetime would continue in effect with respect to future members on the Board of Operatives, including the restriction limiting membership to white men only. The Codicil itself provided that all persons employed in the future by Acipco would be bene-

ficiaries of Mr. Eagan's beneficent trust, with "all of the rights and privileges enjoyed by the employees of said Company at the time of my death and subject to the same conditions" (See Plaintiffs' Exhibit 1, Page 10). At the time of Mr. Eagan's death and during his lifetime, membership on the Board of Operatives was not a right or privilege enjoyed by Negro employees under the conditions and circumstances of that time.

The evidence shows that from the inception of the Eagan Plan until the present time, the stockholders, trustees and officers of the Company, mindful of their responsibility to be faithful to the terms and conditions of the Eagan Plan and Trust, have diligently endeavored to fulfill the spirit and letter of Mr. Eagan's Plan and Trust, with respect to eligibility for membership on the Board of Operatives and in regard to the separate existence and operation of the advisory Auxiliary Board. The Court finds that the racial restriction on membership on the Board of Operatives and the existence and operation of the segregated Auxiliary Board were in full accord with the original intent of Mr. Eagan, and were therefore proper and in no wise unlawful until July 2, 1965, the effective date of Title VII of the Civil Rights Act of 1964.

However, the passage of Title VII of the Civil Rights Act of 1964 presents, in the judgment of this Court, a novel case of first impression. Assuming the propriety and lawfulness of the operation of the Eagan Plan at Acipco prior to July 2, 1965, the issue is presented concerning the effect on the Eagan Plan of the new and overriding legislative policy of Title VII which now controls the employment practices of all private corporations covered by the Act. Title VII now prohibits, in no uncertain terms, any discrimination by an employer with respect to compensation, terms, conditions or privileges of employment because of an individual's race or color The Court believes that the right to serve as a member on the Board of Operatives at Acipco has been, since the inception of the Eagan Plan, a valuable term, condition or privilege of employment at Acipco and therefore falls within the express coverage of Title VII, 42 U.S.C.A. 2000e–2(a).[3]

Therefore the Court holds and declares that the racial restriction on membership on the Board of Operatives to "White men only" is unlawful and must be removed. The Board of Operatives will continue to operate and to carry out its functions as an integral part of the Eagan Plan with its members serving as joint stockholders and co-trustees under the Eagan Codicil as in the past, subject, however, to the elimination of the racial restriction on its members. The Court further finds that upon the elimination of the racial restriction on membership to the Board of Operatives the continued and separate existence of the advisory Auxiliary Board composed of Negro employees only and elected by Negro employees only would be unnecessary, and the Court holds that the continuation of such separate Auxiliary Board would also constitute a violation of Title VII. Therefore, the Auxiliary Board must be abolished simultaneously with the elimination of the racial restriction on membership of the Board of Operatives.

Elimination of the racial restriction on the Board of Operatives, together with disestablishment of the separate Auxiliary Board will, in the opinion of the Court, provide all employees of the Company an equal opportunity regardless of their race or color to vote for representatives on the Board of Operatives and to serve on the Board of Operatives. Furthermore, in the future, the members of

3. The Equal Employment Opportunity Commission determined that the defendant had violated Title VII by "maintaining a segregated Board of Operatives which performs functions of a labor organization and may not be segregated under the Civil Rights Act of 1964", a determination which the Court pretermits as being unnecessary to this decision.

the Board of Operatives, elected and serving without regard to race or color, will be able to appoint all members of the standing committees and special committees of the Board of Operatives without being in violation of the provisions of Title VII.

The Court further believes that an accommodation of the original Eagan Plan as provided above will bring the Eagan Plan into compliance with the requirements of Title VII without doing violence to the primary principles and objectives of Mr. Eagan when he established his beneficent and socially desirable plan and trust. The Court has noted the acknowledgment in the employees' manual that Mr. Eagan's whole life work was not limited to any race, creed or class of people and that he gave support during his own lifetime to the Commission on Inter-Racial Cooperation (see Plaintiffs' Exhibit 1, Page 8). Knowing this, the Court is confident that Mr. Eagan would now desire to modify the Eagan Plan himself in order to bring his Plan into conformity with the present law if he were alive today. Compare Commonwealth of Pennsylvania v. Brown, 392 F.2d 120 (3rd Cir., 1968, cert. denied, 391 U.S. 921, 88 S.Ct. 1811, 20 L.Ed.2d 657). In any event, the restriction imposed on membership on the Board of Operatives must fall, being no longer compatible with prevailing law and, in the judgment of the Court, being incidental to Mr. Eagan's primary purpose and objective of benefitting all of the employees of Acipco and their families.

There remains one further important aspect concerning the Board of Operatives issue to which the Court has given serious consideration. At the present time the Board of Operatives consists of twelve members elected from five plant districts. The evidence shows that there is a total of 2604 employees employed at defendant's plant, of whom 1760 are white employees, and 824 are Negro employees. The white employees are in a substantial majority in each of the five districts. Thus it is unlikely that any Negro employee would be elected to the Board of Operatives under the present election districts if the voting should polarize along racial lines.

The present electoral districts were established ten years ago, in 1959. While there is no evidence that the districts were designed in any way to discriminate against any employee because of his race or color, the Court has an obligation to make sure that the electoral districts, which will be used in the future for purposes of electing members to the Board of Operatives, do not have the effect of discriminating against any employee because of his race or color. This is true even though the most recent election districting plan was established prior to the effective date of Title VII.

The Eagan Plan envisioned the necessity of modifications or changes in the electoral districts from time to time to reflect possible changes in the defendant's plant. For example, the original election plan in 1922 provided for ten electoral districts. Modifications and changes have been made through the years so that there are now only five election districts. Section 3 of ARTICLE III of the rules and regulations of the Board of Operatives provides that "the number of members on the Board of Operatives and the combination of departments into electoral divisions shall be subject to change once a year, prior to the annual election, and such change shall be made by a two-thirds majority of the Board of Operatives and with the consent and approval of the Board of Management." (See Defendant's Exhibit 3). The Court believes that it is now in order for the defendant in conjunction with the Board of Operatives to restudy the electoral division arrangement to ascertain whether or not the electoral districts as presently constituted reflect the changes in the plant and operations of the Company which may have occurred in the past ten years. At the same time, such a restudy will reveal whether the present districts are fairly and properly drawn without discrimination because of race or color in the light of the passage

of Title VII since the establishment of the present districts. The defendant should report to the Court the results of its study and any recommendations for changes needed to be made with sufficient information for the Court and the plaintiffs' attorneys to evaluate such recommendations.

■ As above noted, at one time twice as many districts as the present five districts were utilized. The Court believes that a reasonable enlargement in the number of electoral districts at this time would be compatible with the original Eagan Plan and might provide all employees a better opportunity of being elected to the Board of Operatives without regard to race or color. As a caveat, the Court points out that the election district arrangement should not be drawn or gerrymandered for the purpose of either depriving or guaranteeing any employee of a particular race or color the right to serve on the Board of Operatives. This would be contrary not only to the spirit and letter of the original Eagan Plan and Trust, but also to the provisions of Title VII and the prevailing law. Such arrangement of election districts must be on genuine geographical, operational and functional grounds in the manner contemplated by the Eagan Plan so that employees throughout the plant will have the opportunity of electing fellow employees working in their own areas or districts to the Board of Operatives on a fair basis.

The Court has also given careful consideration to the manner and time which should be followed to effectuate the necessary changes to bring the Eagan Plan into compliance with Title VII.

For forty-seven years annual elections have been held on April 1st of each year, with the new terms of office for newly elected Board of Operatives beginning on May 1 of each year. Prior to the holding of any election, a plan calling for the elimination of the racial restriction on membership to the Board of Operatives, the disestablishment of the separate and segregated advisory Auxiliary Board, the necessary amendments to the By-Laws of the defendant corporation and to the rules and regulations of the Board of Operatives, and a fair and proper election district arrangement based on a current re-study of the present election districts should be prepared and submitted to the Court for Court approval. A copy of the plan should be provided to plaintiffs' counsel.

The Court believes that the terms of office of all members now serving on the Board of Operatives and on the Auxiliary Board should be declared vacant and terminated as of April 30, 1970; and the plan for the election of a new Board of Operatives encompassing the elimination of the racial restriction on membership and providing for a fair and proper election district arrangement should be made effective as of April 1, 1970, at which time a new election for all places on the Board of Operatives should be held.

Further injunctive relief is deemed inappropriate at this time. However, the Court will retain jurisdiction of this matter, pending submission and approval of the plan of compliance required by the Court Order.

### DECREE

In conformity with the opinion of the court filed contemporaneously herewith, it is ordered, adjudged and decreed by the Court:

1. That the racial restriction limiting membership on the Board of Operatives of the defendant Company under the Eagan Plan to white men only and the separate existence and functioning of the Advisory Auxiliary Board limited to Negro employees and elected by Negro employees only, violate Title VII of the Civil Rights Act of 1964.

2. That the defendant be and is hereby required to prepare a plan to eliminate the racial restriction on the Board of Operatives; and to simultaneously disestablish the existence of the separate advisory Auxiliary Board. Such plan

shall include all necessary amendments and modifications to the Corporation's By-Laws, rules and regulations pertaining to the Board of Operatives and such other action as may be necessary to accomplish the changes in the Eagan Plan provided for in Paragraphs 1 and 2 hereof. Said plan shall also include an examination of the present election districts and any recommendations needed to establish electoral districts for the election of future members of the Board of Operatives on the basis of fairly and properly drawn election districts without discrimination to the employees of Acipco because of their race or color. The plan shall also include sufficient information to make known to the Court and to plaintiffs' counsel the factors and grounds used in the development of the electoral districts to be used in the April 1, 1970 election of members of the Board of Operatives, and shall also set out therein the approximate number of white and Negro employees in each of the electoral districts.

3. That the modifications and changes to the Eagan Plan required by this Order shall be placed into effect in the following manner: (a) the terms of office of all present incumbents on the Board of Operatives shall be declared vacated as of April 30, 1970, (b) the election on April 1, 1970 shall be held to fill all vacancies on the Board of Operatives in conformity with the plan to be approved by this Court, and (c) new members elected to the Board of Operatives under the approved plan shall take office on May 1, 1970.

4. That the plan required to accomplish the aforesaid purposes be filed in the office of the Clerk of this Court on or before February 2, 1970, and a copy of said plan be furnished to Plaintiffs' counsel on or before such date.

5. That the plaintiffs will have ten days after receipt of a copy of the plan in which to file any exceptions to the plan and any objections to any proposed redistricting plan submitted by the defendant.

6. That defendant's plan, including its recommendations for a new electoral districting arrangement, if any, be submitted for the approval of the Court at a hearing at 10:00 A.M. on the 26th day of February, 1970, at which time all interested parties will be afforded opportunity to be heard with respect to any objections or exceptions to such plan.

MEMORANDUM OPINION
AND ORDER

On October 20, 1969, an evidentiary hearing was held in this case, limited by consent of the parties to the sole issue of the Board of Operatives and the advisory Auxiliary Board under the Eagan Plan which has been in existence at the American Cast Iron Pipe Company for over forty years, and the effect of the passage of Title VII of the Civil Rights Act of 1964 on this feature of the Eagan Plan.

After considering the evidence presented at the evidentiary hearing and the arguments of counsel, the Court entered its Opinion and Order on January 21, 1970, holding that the racial restriction limiting membership on the Board of Operatives to "white men only" and the separate existence and functioning of the advisory Auxiliary Board limited to Negro employees and elected only by Negro employees, was violative of Title VII of the Civil Rights Act of 1964. The defendant was instructed to prepare and submit to the Court on or before February 2, 1970 a plan to eliminate the racial restriction on the Board of Operatives and to simultaneously disestablish the existence of the separate Advisory Auxiliary Board. The Court required the defendant to examine the present electoral districts and to include in the plan, required by the Court's Order, any recommendations needed to establish fair and proper electoral districts based on genuine geographical, operational, and functional grounds without discrimination to the employees of the American Cast Iron Pipe Company because of their race or color. The Court advised the de-

819

fendant to consider increasing the number of the existing electoral districts from which representatives thoughout the plant would be elected to the Board of Operatives, and who by virtue of their election serve as Co-Trustees under Mr. Eagan's Will. The Court cautioned the defendant that the electoral districts should not be drawn or gerrymandered for the purpose of, or having the effect of, depriving or guaranteeing any employee of a particular race or color the right to be elected and to serve on the Board of Operatives.

The defendant filed a plan of compliance on February 2, 1970, and furnished a copy of the plan to plaintiffs' counsel. In accordance with the Court's Order, a hearing was held on February 26, 1970 to afford all parties an opportunity to be heard with respect to any objections or exceptions to such plan. Prior to the date set for the hearing, plaintiffs' counsel filed objections and exceptions to defendant's plan. No additional evidence was presented at the February 26th hearing. At the request of counsel, the Court treated all evidence previously presented at prior hearings in this case as being resubmitted for the determination of this issue.

The Court having heard and carefully considered the evidence submitted at prior hearings, the plan of compliance submitted by the defendant, the exhibits attached to the defendant's plan, and the arguments of counsel, finds the following facts and states the following conclusions of law in the form of this Memorandum opinion.

█ The plan of compliance submitted by the defendant enlarges the number of electoral districts from five to twelve, and provides for the election of one representative on the Board of Operatives for each district. The exhibits attached to the defendant's plan show the geographical location of each district within the plant, the composition of employment units in each district, and the grouping of employees by race in each district.

The proposed twelve electoral districts have been organized and are based on genuine geographical, operational and functional grounds without any intention or purpose to gerrymander the districts because of racial considerations. The plan is lawful under the provisions of Title VII and conforms to the advice and instructions given to the defendant in the Court's previous Order in this case.

█ At the hearing on February 26, 1970, the plaintiffs voiced no objection to the geographical boundaries or composition of the twelve electoral districts provided in its plan and offered no alternative suggestions which might provide any fairer grouping of employees in districts throughout the plant. The objections and exceptions filed by plaintiffs, and the arguments of plaintiffs, appear to be based primarily on a reiteration of their contention that any plan approved by the Court should provide some form of proportionate racial representation on the Board of Operatives, either on an interim or permanent basis. The Court rejects this contention as being incompatible with the basic features of the Eagan Plan and with the applicable provision of federal law. The Court feels that it should not, and it will not, engage in a presumption that employees elected from fair and properly drawn electoral districts, will not fairly represent the interest and rights of employees of another race or color and faithfully serve as Trustees under Mr. Eagan's Will. The Court is of the further opinion that representation on the Board of Operatives based upon racial requirements would be contrary to the provisions of Title VII of the Civil Rights Act of 1964.

Plaintiffs' objections and exceptions to defendant's plan are due to be overruled and defendant's plan of compliance with respect to the Board of Operatives' issue is due to be approved, subject to the Court retaining jurisdiction with respect to this issue until a final hearing and decision on all of the issues in this case.

During the course of the hearing held on February 26, 1970, consideration was given to the practical effect of any court Order on the administration of employee charitable donations voluntarily contributed by members of each race through individual payroll deduction authorizations for disbursements to the United Appeal Fund and to other recognized charities in the Birmingham area supported especially by members of the respective races. The Court recognizes that all of the parties desire to avoid any adverse effect resulting from this suit or the Court's Order on the Acipco Charity Fund program which results in total distribution to worthwhile and recognized charities in excess of $200,000 per year, and shares the concern of all parties with respect to this problem. The best solution for this problem appears to be the creation of a bi-racial charity committee during the interim period until a final hearing and decision of all issues in this case. Accordingly, the defendant is urged by the Court to supplement the plan by providing for an advisory bi-racial charity committee composed of six white employees and six Negro employees, to be selected first from those employees elected to serve on the Board of Operatives; and in the event a sufficient number of either race is not elected to serve on the Board of Operatives, then from the members of such race who received the highest number of votes during the most recent election of members to the Board of Operatives beginning with the April, 1970 election. In this manner, distributions to selected charities of contributions voluntarily made by the employees of each race may be made in accordance with decisions made by the six representatives of their particular race during this interim period.

The Court adopts as a part of this Memorandum Opinion and Order the Findings of Fact and Conclusions of Law contained in the Court's Opinion of January 21, 1970.